PHILIP FASSLER, APPELLANT, V. RUDOLPH STREIT ET AL., APPELLEES.

FILED JANUARY 16, 1913. No. 16,872.

1. **Bills and Notes: NEGOTIABLE INSTRUMENTS ACT.** The negotiable instruments act (Comp. St. 1905, ch. 41) does not apply to negotiable instruments executed and delivered before it went into effect.

2. ———: ASSIGNMENT: DEFENSES. While an assignment indorsed on the back of a mortgage or on a separate slip of paper may be effective to transfer the equitable title to the note secured, it is not a commercial indorsement cutting off defenses which would have been available to the maker of the note in a suit against him by the original payee.

3. **Evidence:** DECREE: ADMISSIBILITY PENDING APPEAL. Where the giving of a supersedeas bond and the perfecting of an appeal stay proceedings until there has been a trial *de novo* in the appellate court, the superseded decree, pending appeal, is not admissible in evidence to prove a final adjudication binding on the parties or determining their rights.

4. ———: ———: ———. Where a party whose rights are affected by a decree in a former suit pleads, in a subsequent action, that the decree is not final and that he intends to appeal, and introduces in evidence a supersedeas bond obligating himself to prosecute his appeal to effect without delay, he cannot, in such a state of his pleadings and proof, use the superseded decree as evidence of a

final adjudication binding on the parties or determining their rights.

5. **Appeal**: EVIDENCE: REVIEW. The supreme court must consider an appeal on the evidence before the trial court, except in the rare instances where new matter arising after the entry of judgment is brought into the case by supplemental proceedings.

6. ———: NEW EVIDENCE. After an appeal has been taken from the district court to the supreme court, new facts of which the trial court had no knowledge will not be introduced into the record by judicial notice.

7. **Evidence**: JUDICIAL NOTICE: RECORDS. While a court will take judicial notice of its own records, it will not in one case take judicial notice of the records in another case.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*Bernard McNeny,* for appellant.

*L. H. Blackledge* and *E. U. Overman,* contra.

ROSE, J.

This is a suit to foreclose a mortgage for $1,300 on a quarter-section of land in Webster county. The note secured was executed February 16, 1904, and by its terms matured March 1, 1909. A payment of $300 was made June 13, 1906. Andrew P. Johnson was payee, and Rudolph Streit and Amelia Streit were makers and mortgagors. Philip Fassler is plaintiff, and pleads that the note was assigned in good faith by the payee to V. S. Hall, June 17, 1907, and by the latter to plaintiff, November 7, 1907, and that he is an innocent holder without notice of any defense. Mortgagors are defendants. June Paulson, Martin Paulson, Carrie Paulson, Nels Paulson, Mary Paulson and Lena Peterson are joined as defendants, and it is alleged that they claim some interest in the mortgaged premises, but that it is inferior to plaintiff's lien.

In his answer Rudolph Streit admitted the execution

of the note and mortgage and the payment of $300, as pleaded by plaintiff, but denied other allegations of the petition, including the *bona fides* of the transfers. He also pleaded that the note and mortgage were given by him in part payment of the purchase price of the mortgaged land; that he purchased it from Johnson, who executed and delivered to him a warranty deed, but that thereafter, and before any actual or pretended transfer of the mortgage, the Paulsons and Lena Peterson set up a claim of title adverse to that of Johnson and his grantee, and in the district court for Webster county an action was instituted wherein the Paulsons were plaintiffs and Lena Peterson and the Streits were defendants; that, upon Streit's answer and cross-petition therein, Johnson and Hall were made parties, and the latter, after having been served with summons, defaulted; that upon issues joined and tried in the former suit it was decreed that the Paulsons had an interest in the mortgaged land adverse to that of Johnson and his grantee, and that collection of the note and enforcement of the mortgage be enjoined pending an accounting between Johnson and his grantee as to the damages on account of the covenants of seizin and warranty in Johnson's deed. It is further alleged in Streit's answer herein that the decree in the former suit was rendered September 24, 1909, and has not become final as to the parties affected by it; that the time for appeal therefrom has not expired; that he is proceeding to perfect an appeal therefrom to the supreme court. In the answer it is also alleged that Hall and plaintiff herein, before the making of the assignments pleaded by the latter, knew of the adverse claims of the Paulsons and of the pendency of their action, and of the liability of Johnson to his grantee, and of the latter's right and intention to recoup his loss out of the mortgage indebtedness, in the event it should be finally adjudged that Paulsons had an interest in the mortgaged land; that plaintiff knew Johnson to be a non-resident of the state. In a reply allegations of new matter in the answer were

denied. For the purposes of this appeal reference to the pleadings of other parties seems to be unnecessary. Upon a trial of the foreclosure suit, the petition was dismissed April 16, 1910, and plaintiff has appealed.

Plaintiff argues there is error in the dismissal of his suit to foreclose the mortgage, because the petition, the evidence, and the findings of the trial court show, as he asserts, that he is a *bona fide* holder of the note for value before maturity, without notice of defenses thereto, and that, therefore, any defense pleaded is unavailing. Do the assignments pleaded amount to commercial indorsements protecting plaintiff as a *bona fide* holder? There is no indorsement of a transfer of any kind on the note. It is payable to "Andrew P. Johnson or order," and his assignment appears on the back of the mortgage in the following form: "Berkley, June 17, 1907. For and in consideration of the sum of One Thousand ($1,000) Dollars to me in hand paid, receipt of which is hereby acknowledged, I have this day assigned all my right, title and interest in the within described property to V. S. Hall of Bladen, Nebraska. Andrew P. Johnson."

What is relied upon by plaintiff as an indorsement to him was written with a pencil on the back of a deposit slip of the Exchange Bank of Bladen, Nebraska. At the time, Johnson was in California, and the note was in Hall's bank at Bladen. The writing is as follows: "June 18, 1907. Purchased of A. P. Johnson Streit Mort. & note. $1,300. Nov. 9, 1907. Sold same to P. Fassler. V. S. Hall."

Referring to the transfers of the note, the trial court found that a formal assignment was made by payee on the back of the mortgage; that the note was not attached to the mortgage and assignment; that the note and mortgage were kept together, but were not physically united or attached to each other; that payee made no indorsement on the note; that no assignment of the mortgage was made by Hall to Fassler; that the note was not indorsed by Hall, but that on a separate piece of paper he made a

notation of the sale of the note and mortgage to Fassler, and signed the same; that the notation was placed with the note and mortgage, but not physically attached thereto, and the three instruments were delivered to plaintiff; that, there being no indorsement on the note or on a paper attached thereto, it is subject to any defense the makers may have against the payee.

Notwithstanding these findings, plaintiff insists he is a holder in due course within the meaning of that part of the negotiable instruments law which declares: "The indorsement must be written on the instrument itself, or upon a paper attached thereto." Comp. St. 1905, ch. 41, sec. 31. Plaintiff insists that the papers were attached, and that he is entitled to protection as an innocent holder, since the trial court, in addition to the findings already mentioned, found that Hall purchased the note and mortgage June 18, 1907, for a good and valuable consideration, without notice of any defense, and that plaintiff likewise purchased them in November, 1907. If plaintiff is correct in asserting that the papers were attached, within the meaning of the negotiable instruments law, and if the language quoted changed the law merchant, questions not decided, the point, as argued, is nevertheless not well taken, because that statute is inapplicable. It went into effect, according to its terms, August 1, 1905. Comp. St. 1905, ch. 41, sec. 198. The note was executed and delivered at an earlier date, namely, February 16, 1904. The act declares: "The provisions of this chapter do not apply to negotiable instruments made and delivered prior to the taking effect hereof." Comp. St. 1905, ch. 41, sec. 193. The rights of the parties must therefore be determined according to the law in force prior to the enactment of the negotiable instruments statute. *Dorsey v. Wellman,* 85 Neb. 262.

Independently of the statute, were the assignments commercial indorsements protecting plaintiff from the defenses pleaded? It has been distinctly held that an assignment indorsed on the back of a mortgage, though

it may operate as an equitable transfer of the note, does not cut off defenses which would be available to the maker in a suit by the original payee. *Doll v. Hollenbeck*, 19 Neb. 639; *Colby v. Parker*, 34 Neb. 510; *Gaylord v. Nebraska Savings & Exchange Bank*, 54 Neb. 104; *Sackett v. Montgomery*, 57 Neb. 424; *Nebraska Nat. Bank v. Pennock*, 55 Neb. 188. In the case last cited it was held: "A transfer by an instrument separate from, and independent of, the note, while it operated to convey the title, did not cut off equities or defenses, as would have been done had this negotiable note been regularly indorsed."

Plaintiff contends, however, that the assignments and the note were kept together, that they were attached, and that they should not be considered as separate instruments. It is true Hall testified, in reference to his assignment on the deposit slip, that it "was made out and 'attached' to the paper at the time of the purchase of the mortgage;" but, when all the testimony is considered, it is apparent he used that word in the sense that, when the papers were kept together, he understood they were "attached." This seems to be the proper interpretation of his testimony, when other evidence shows the trial court properly found that the deposit slip was not physically attached to the note or mortgage. It seems equally clear that neither the deposit slip showing Hall's transfer nor the mortgage on which Johnson's assignment was indorsed can be considered an allonge, since it appears that there was nothing on the back of the note except a credit of $300, and that therefore there was no necessity for an additional slip for indorsements.

It is further argued that the dismissal of the foreclosure suit is erroneous, because there is no competent evidence that Streit was evicted, or that he surrendered possession of the land purchased by him from the mortgagee, or that the consideration for the note failed. Plaintiff's argument on this point has not been successfully refuted. It is not even asserted that Streit was evicted

or that he surrendered possession. The only proof that his title failed is found in the decree in the suit by the Paulsons to quiet their title. This decree, when received in evidence, was inadmissible for the following reasons: Streit alleged in his answer herein that the decree had not become final, that the time to appeal had not expired, and that he was proceeding to perfect an appeal to the supreme court. · He is bound by these averments. In addition, he introduced in evidence a properly executed· supersedeas bond reciting his intention to appeal and obligating himself to proceed without delay. The effect of the supersedeas bond was to suspend proceedings under the decree. There is nothing in the record to show that his appeal was not prosecuted according to his declared purpose and to the obligation of his bond. In *Riley Bros. Co. v. Melia,* 3 Neb. (Unof.) 666, this court, in an opinion by BARNES, C., announced the following rules:

"The perfecting of an appeal to this court from a decree of the district court in a suit in equity, ·together with the filing and approval of a supersedeas bond, operates to suspend such decree, and the case is thereupon pending here for trial *de novo.*

"By the perfecting of such appeal the parties are placed in the same situation, and their rights are the same, as they were at the time of the commencement of the action."

While the decision in that case appears to go further than the opinion in the earlier case of *Creighton v. Keith,* 50 Neb. 810, this language is used therein: "A decree is affected by an appeal no further than that proceedings are stayed pending the review, where there has been filed a proper bond, and perhaps the decree is not admissible as evidence."

Under the practice in this state, pleadings, in an appeal in equity, may, under some circumstances, be amended in the supreme court, and the decree of the trial court may be affirmed or modified or reversed, or a different decree may be rendered, after a trial *de novo.* In

jurisdictions where a supersedeas and an appeal have the effect of staying proceedings in the trial court and of bringing up the entire case for a trial *de novo,* the rule generally sanctioned is that the decree, pending appeal, is not admissible as evidence of a final adjudication binding on the parties or determining their rights. *Day v. De Jonge,* 66 Mich. 550; *Souter v. Baymore,* 7 Pa. St. 415; *Naftzger v. Gregg,* 99 Cal. 83, 37 Am. St. Rep. 23; *Sharon v. Hill,* 26 Fed. 337; *Haynes v. Ordway,* 52 N. H. 284; *Byrne, Vance & Co. v. Prather,* 14 La. Ann. 663; *Small v. Haskins,* 26 Vt. 209; *In re Blythe,* 99 Cal. 472; *Sherman v. Dilley,* 3 Nev. 21; *Griffin v. Seymour,* 15 Ia. 30. In *Glenn v. Brush,* 3 Colo. 26, the supreme court of that state said: "The object of a writ of error is to review and correct an error of law, and it is no bar to further proceedings, unless bond and security is given; when that is done the writ operates as a supersedeas; the party cannot afterward proceed to execute his judgment until the appellate court has rendered its judgment thereon. The judgment of the court below in the meantime is suspended; and a suspended or inoperative judgment is not evidence of title. It is suspended for all purposes until affirmed or reversed by the supreme court. If affirmed, it is binding; if reversed, it is a nullity. We are aware there are decisions at variance with this opinion, but it is fully sustained by authority and reason."

Streit, having alleged in his answer that the decree was not final and that he intended to appeal, having executed and introduced in evidence a supersedeas bond, and having offered no proof to show that he had abandoned his appeal or that it had not in fact been taken, or that it had been perfected and dismissed. or that the decree had been affirmed, should not have been permitted to introduce it as evidence of a final adjudication, or of an estoppel, or of a final determination of the rights of the parties. There being no other proof to show that his title failed, the dismissal is not supported by evidence.

To avoid the effect of pleading and proof that the de-

cree was not final, that Streit intended to appeal and that he executed a supersedeas bond, he now asks this court to take judicial notice of its own records which, he says, show that no transcript for an appeal was ever filed here and that the time for appealing has expired. For two reasons this course cannot be pursued: (1) It is a fundamental principle of appellate procedure that courts of last resort must determine an appeal on the evidence before the trial court, except in the rare instances where new matter arising after the entry of judgment is brought into the case by supplemental proceedings. It was not the duty of the trial court, contrary to the alleged purpose and absolute right of Streit to appeal, as shown by his answer and by the recitals in his supersedeas bond, to assume, or to take judicial notice, that no appeal had been, or would be, taken. The reviewing court should not by judicial notice introduce into the record facts of which the lower court had no knowledge. Any other rule would be manifestly unfair to the trial court and to the parties, who are entitled to a full and impartial hearing in the court of original jurisdiction. (2) While a court will take judicial notice of its own records, it will not in one case take judicial notice of the record in another case. *Allison v. Fidelity Mutual Fire Ins. Co.*, 74 Neb. 366; *Gibson v. Buckner*, 65 Ark. 84; *Ralphs v. Hensler*, 97 Cal. 296; *Downing v. Howlett*, 6 Colo. App. 291; *Streeter v. Streeter*, 43 Ill. 155; *Enix v. Miller*, 54 Ia. 551; *Thayer v. Honeywell*, 7 Kan. App. 548; *Anderson v. Cecil*, 86 Md. 490; *Banks v. Burnam*, 61 Mo. 76; *Daniel v. Bellamy*, 91 N. Car. 78; *Grace v. Ballou*, 4 S. Dak. 333; *Goodwin v. Harrison*, 28 Tex. Civ. App. 7; *McCormick v. Herndon*, 67 Wis. 648.

In another respect, the answer and the proof are insufficient to justify the relief granted to Streit. He did not fully show that there was a total failure of consideration for the note, or that the damages resulting from the original payee's breach of covenant equaled or exceeded the amount due on the note. For the errors

pointed out, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., concurring.

The first assignment, as introduced in evidence, does not assume to assign the note at all. It simply assigns the mortgagee's interest in the land mortgaged. The second paper introduced in evidence was clearly in its form and wording not intended as an indorsement of the note, and that I suppose is the real test. If there had been no room upon the back of the note for a regular indorsement, and a paper was attached purporting and intended as an indorsement, then plaintiff might have been an innocent purchaser.

The findings of the trial court upon the question whether plaintiff is a *bona fide* holder without notice are inconsistent, unless we very liberally construe the first and seventh findings. The sixteenth finding is that the note, not being indorsed in writing or on a paper attached thereto, is subject to any defense that the defendants might have against the original payee, and the decree is based upon that theory; therefore, in the first and seventh findings the court must have meant the plaintiff had no actual notice, and did not refer to the notice that follows from the fact that the note was not indorsed.

The findings of the trial court will not support the judgment dismissing the action. There are no findings as to values or damages, and, of course, if the plaintiff has any interest in the property his action ought not to be dismissed. The case at bar involves the same questions that were presented and litigated in the former action, and, if that former action was not finally determined at the time that the case at bar was tried in the lower court, that court should have continued the case at bar until the former action was finally determined, and then should have rendered his decree accordingly. The case being in

equity and all the parties interested before the court, the court in rendering a final decree should have disposed of the whole matter and fixed and enforced the rights of all the parties.

There is considerable discussion in the briefs as to whether an action, or rather a claim, like that of Mr. Streit, could be presented and litigated before he had been evicted from the premises. Johnson sold him the land and took a mortgage back, and is now trying to foreclose that mortgage. He invokes the powers of a court of equity and should do equity. The question as to the form of a warranty, and whether there must be an eviction pleaded and proved, is immaterial in the case. It would not be doing equity on the part of the plaintiff to sell Streit or his grantor a piece of land and take a mortgage back, and then foreclose the mortgage and take the land and not allow Streit to defend, because he, Streit, had not been evicted. According to the allegations of the petition, the first action was begun before Johnson sold the mortgage itself, and the man Hall, to whom Johnson sold the mortgage, was made a party and duly served with process. He was holding it as a bailee for Johnson, and he could not buy it as an innocent purchaser after that.

In the former action it was found that Streit's title had in part failed, and by the decree he was subrogated to a mortgage which appears to be prior to the title of those who were successful in attacking Streit's title, so that they could not take the land away from Streit without paying the prior mortgage. Clearly, the court in the case at bar should not allow Streit to be foreclosed and removed from the land without hearing and adjudicating his counterclaim. The old mortgage would inure to the benefit of the plaintiff, and the court should, if necessary, have the interest of the parties who were claiming the land against Streit sold under the old mortgage; that is, the court should determine the whole matter and take such action as would, as far as possible, protect all of the

innocent parties, and place the loss, if any, where it belongs.