MARCE WITZENBURG, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

299 N. W. 533

FILED JULY 25, 1941. No. 31081.

*Albert S. Johnston,* for appellant.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff alleges that in July, 1932, he was employed by oral contract at $250 a month to render services to the defendant as an employee of the department of trade and commerce (later department of insurance) in connection with the affairs of the Lincoln Hail Insurance Company then in the hands of the department; that the statutes authorized the department to give its employees such powers and duties as it considered proper; and that the defendant agreed to hold harmless any person so engaged from liability for acts done pursuant to such orders and in reliance upon said orders and in the belief that such orders were authorized and lawful; that prior to July, 1934, the defendant incurred obligations of $20,543.61 in the administration of the trust and placed funds of said trust in the hands of plaintiff and one F. A. Wood and directed that they be disbursed in the payment of said obligations; that plaintiff and Wood were informed that said funds could be so used lawfully and that the court had so authorized their use; that plaintiff and Wood so disbursed the funds, exercising no discretion in so doing, under orders of the defendant, believing that their acts were authorized and legal and relying on the agreement

of the defendant to hold them harmless; that the amounts so paid were authorized and approved by the court in the action then pending involving said insurance company; that in July, 1934 (after the disbursement of said funds) policyholders intervened in the district court action claiming that the moneys used in the payment of said expenses were funds which could not be used for that purpose and that plaintiff was liable therefor; that the defendant and its attorney general were notified and agreed to defend said action and hold the plaintiff harmless; that the defendant abandoned the defense of said action and plaintiff employed his own counsel; that in said action it was adjudged that $12,633.56 was not lawfully disbursed and plaintiff and Wood were required to repay the same with interest, which they did, and that the judgment, costs and attorneys' fees so paid amounted to $15,145.72; that the plaintiff acted throughout in good faith and relying upon defendant's statement that it had the authority to so use the funds; that at all times during plaintiff's employment the defendant had ample assets of the trust to have paid the expenses of its administration, and to hold the plaintiff harmless, but it failed to do so; and that by reason thereof defendant is obligated to indemnify plaintiff for the amount spent in making restoration. The above constitutes a summary of the allegations of plaintiff's first cause of action.

For a second cause of action plaintiff alleges that he was paid his salary to December 31, 1933; that it was agreed that his salary subsequent thereto should be paid when the remaining assets of the trust were liquidated; that plaintiff continued said employment until January 28, 1935; that his unpaid salary amounts to $3,233.33; and that defendant disposed of the assets of the trust and did not pay him.

Plaintiff further alleged, as to both causes of action, that he presented a claim for the amounts due him to the department for approval, but that that department failed to approve the same; that he then presented the claim to the auditor of public accounts, who informed plaintiff that there were no funds appropriated or available for its payment and re-

ferred the same to the claims and deficiencies committee of the legislature; that that committee did not approve the same; that that committee was of the opinion that it presented a question of contract and that the liability of the defendant could be determined by the courts without further legislative action.

Plaintiff prayed judgment for the sum of $15,145.72 on his first cause of action and the sum of $3,233.33 on his second cause of action.

To the petition the defendant demurred generally for the reason that the facts stated in the petition "are insufficient to constitute a cause of action against this defendant."

The trial court sustained the demurrer, holding the petition deficient in the following particulars:

(1) The defendant was without power or authority, express or implied, to enter into the contract alleged; (2) the liability, if any, on the part of the state for alleged services or expenses rendered in the liquidation of the insurance company is a charge against the assets of the company and not of the state; (3) the action of the district court to which plaintiff refers in his petition was appealed to the supreme court of Nebraska and a decision rendered therein which is *res adjudicata* of any alleged cause of plaintiff.

Plaintiff elected to stand on his petition; his case was dismissed and he appeals.

A detailed summary of the facts surrounding this transaction may be found in *State v. Lincoln Hail Ins. Co.*, 133 Neb. 496, 276 N. W. 169, wherein this court affirmed a judgment in favor of the receiver of the insurance company against plaintiff and Wood in the sum of $12,633.56, for moneys unlawfully diverted and misappropriated and denied them a judgment for compensation.

The plaintiff in this action seeks to require the defendant (state) to reimburse him for the money which he alleges he paid in satisfaction of that judgment and to require the defendant to pay him the salary which he was denied in that action.

The theory is that the acts done by the plaintiff which

resulted in the judgment against him were in fact the acts of the defendant; that the defendant itself, acting through its officers, took the trust funds to pay these expenses which the defendant had incurred; that the plaintiff was required to restore these funds because they passed through his hands while he was acting pursuant to orders; that he unknowingly and unwittingly trespassed upon the rights of the beneficiaries of the trust relying upon the statements of officials of the defendant that the funds could be so used and that said use of the funds had been approved by court order; that the decision to so use the funds was not the decision of the plaintiff but of the defendant; and that the defendant agreed to hold the plaintiff harmless; and that the defendant is liable to the plaintiff for the loss which he sustained.

As to the claim for compensation for services, the contention is that the defendant undertook the operation of the business of the insurance company, employed the plaintiff, used his services, and agreed to pay plaintiff for the services so rendered.

To support his contention that he has a right to maintain this action and that he has alleged causes of action against the defendant, the plaintiff cites section 27-324, Comp. St. 1929, providing that "The state may be'sued * * * in any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state;" and upon the holding in *Peterson v. State*, 113 Neb. 546, 203 N. W. 1002, to the effect that a contract with the department of public works, previously authorized by the legislature, is essentially a contract with the state, upon which the state may be sued; and upon *Moore v. Garneau*, 39 Neb. 511, 58 N. W. 179, to the effect that a principal is bound by the acts of his agent, within the scope of the agent's authority, and that that rule applies to the state as well as the individual.

The question here is not whether the state may be sued upon its contract, but whether the contract alleged is one:

that the legislature has authorized or ratified or is founded upon any law of the state.

Plaintiff alleges that he was a special employee of the defendant in the handling of the affairs of the insurance company, which had been placed in the hands of the department in proceedings brought under section 44-204, Comp. St. 1929. That act, in paragraph 4, not only provides that the department shall have power to appoint special employees and to give them "such powers * * * as the department * * * may consider proper," but also that "The compensation of such assistants, counsel and clerks, and all expenses of taking possession of and conducting the business of liquidating any such company, shall be fixed by the department of trade and commerce, subject to the approval of the court, and shall on the certificate of the department of trade and commerce, be paid out of the funds or assets of such company." Here, then, is a legislative direction as to the source of the funds to be used in the payment of compensation for services and expenses. It is a part of the same paragraph defining the powers of the department upon which plaintiff bases his claim and clearly imposes a legislative restriction as to the funds which may be used in the administration of the affairs of insurance companies under the act. By this provision the state does not underwrite those items of compensation and expenses, but specifically defines the source from which payment must come. The plaintiff, obviously, in relying upon the statute for the authority of his employment, likewise must accept that employment subject to the limitations imposed by the act. Plaintiff cites Moore v. Garneau, supra, as authority for the defendant to make the contract to save him harmless and to pay his compensation. The case is not in point. In that case the authority of the state to contract and its liability were not questioned. It was there contended that the contract price for certain goods purchased for the state was excessive. This court there discussed the evidence and held that the state was bound, the agent of the state having acted within the scope of his authority in making the contract.

The rule applicable to this situation is clearly stated in *Stanser v. Cather*, 85 Neb. 305, 123 N. W. 316, where this court said:

"It is a well-established principle that, if a public officer in performing his ministerial duties acts beyond the express authorization of the law, his acts will be held to be void." The rule is that, where an officer exceeds his powers in the performance of his ministerial duties, "the body for which he acts, whether it is the state, a' municipal corporation, or other public organization, is not bound by his acts; and every person dealing with an officer must, at his peril, ascertain the extent of his powers." Throop, Public Officers, sec. 551. In Mechem, Public Officers, sec. 829, it is said: "Every person, therefore, who seeks to obtain, through the dealings with the officer, the obligation of the public, must, at his peril, ascertain that the proposed act is within the scope of the authority which the law has conferred upon the officer." In section 830 of the same work it is further said: "The authority of the officer being a matter of public record or of public law of which every person interested is bound to take notice, there is no hardship in confining the scope of the officer's authority within the limits of the express grant and necessary implications, and such is the well-established rule."

Plaintiff further founds his second cause of action upon the theory that he was an employee of the defendant and that the defendant received the benefit of his service.

These arguments all go contrary to the record of the case of *State v. Lincoln Hail Ins. Co., supra,* upon which judgment plaintiff of necessity bases his causes of action. He refers to it in his petition; he was a party to that litigation; that litigation, as the decision of this court shows, established that the receiver of the insurance company for that company was the beneficiary of the judgment, and that the claim for salary was presented in that case as a claim for services rendered the insurance company. Plaintiff cannot now argue contrary to that record, which he helped to make, and upon which he now relies. The plaintiff not only calls

direct attention to that record but bases his causes of action upon it. Without that record his alleged causes of action would not exist.

The trial court took, and this court may properly take judicial notice of that record. The general rule is that, while a court will take judicial notice of its own records, it will not in one case take judicial notice of the record in another case. *Fassler v. Streit*, 92 Neb. 786, 139 N. W. 628. However, "There may be cases so closely interwoven, or so clearly interdependent, as to invoke a rule of judicial notice in one suit of the proceedings in another suit." 23 C. J. 114; and a court "will take notice of its records to the extent of knowing that the controversy involved in an appeal has already been considered by it on a previous occasion." 20 Am. Jur. 105, sec. 87. "In a case like this the court has the right to examine its own records and take judicial notice thereof in regard to proceedings formerly had therein by one of the parties to the proceedings now before it." *Dimmick v. Tompkins*, 194 U. S. 540, 24 S. Ct. 780. Plaintiff cannot rely in part upon the record made in the former litigation to which he was a party, and ignore, or expect courts to ignore, that part of the record which is not to his liking. Under the circumstances here existing, matters determined in that proceeding are *res adjudicata* and that question may be presented by demurrer. *Van Etten v. Leavitt*, 90 Neb. 461, 133 N. W. 649; *Marsh-Burke Co. v. Yost*, 102 Neb. 814, 170 N. W. 172.

Plaintiff, however, contends that his right to recover under the alleged contract with the defendant did not arise until the termination of the prior litigation, and that that matter of necessity could not have been adjudicated in the former action. As to that it is patent that the defendant was without power or authority to enter into the contract alleged.

The judgment of the district court is

AFFIRMED.