STATE SECURITY SAVINGS CO., A CORPORATION, APPELLANT, V. FLORIAN PELSTER AND JOY PELSTER, HUSBAND AND WIFE, APPELLEES.

296 N.W.2d 702

Filed September 12, 1980.   No. 42766.

Richard J. Butler of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon for appellant.

Vince Kirby for appellees.

Heard before McCOWN and WHITE, JJ., and COLWELL, KORTUM, and GRANT, District Judges.

GRANT, District Judge.

This is an action to collect on an installment note in the amount of $90,691.86 executed by defendants Pelster in favor of plaintiff, State Security Savings Co., on November 19, 1969. Pursuant to the note, 83 monthly payments of $1,601.61 were to be made beginning December 19, 1969. Defendants made regular interest payments and some principal payments up to May 1971, but were continually behind on the payment of principal. On May 6, 1971, defendants made a single payment of $39,121.01 which brought the loan current and prepaid it through January 1973.

In February 1972, plaintiff learned that defendants were selling some secured livestock and not applying the proceeds to payment on the note. An officer of plaintiff went to defendants, took all the remaining cattle, sold them in February and March of 1972, and applied the proceeds to the note.

The trial court found that plaintiff had accelerated the note by its actions in February and March of 1972 of seizing and selling all the secured cattle remaining in defendants' possession, and that, since the instant suit was not filed until January 31, 1978, it was barred by the statute of limitations. Plaintiff appeals, alleging that the instant action was one solely on the promissory note, which by its terms provided for acceleration only in the event of default in payments; that the note was not in default at the time of the seizure and sale of the remaining cattle in February and March of 1972 and, therefore, could not be accelerated; and that the statute

of limitations had not run since it applies to each installment.

The trial court took judicial notice of a security agreement between the parties executed the same day as the promissory note and securing that note. The security agreement was attached, as an exhibit, to a petition filed by plaintiff in a separate subsequent action in the same court against defendants. At the request of defendants, and without objection by plaintiff, the trial court took judicial notice "of the entire file in Case No. 9065 in the District Court of Antelope County, Nebraska, which was filed February 19, 1974, and dismissed by Order of this Court and this judge on March 6, 1975." The terms of the security agreement provided plaintiff with additional grounds for acceleration, including the sale or encumbrance of any of the collateral by defendants or a determination by plaintiff that it deemed itself insecure. The trial court found that the promissory note and security agreement were executed contemporaneously and should be construed together; that plaintiff had deemed itself to be insecure on February 15, 1972, and, by its actions, had declared the entire indebtedness due; that plaintiff's cause of action accrued on or before March 22, 1972, when the seized collateral was sold; and that plaintiff's instant action was barred by the 5-year statute of limitations. We affirm.

The question presented by plaintiff with regard to the judicial notice taken by the trial court is basic to its appeal. Plaintiff, in its first assignment of error, succinctly states its position: "The court erred in basing its order upon a security agreement which was not introduced into evidence at trial but which was attached to the petition of a related case of which judicial notice was taken."

The standard controlling judicial notice is set out in Neb. Rev. Stat. § 27-201 (Reissue 1979), which provides, in part: "(2) A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) gen-

erally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Subsection 2(b) is obviously the section applied by the trial court in this case. We hold that, under the facts of this case, the trial court may take judicial notice of a specific document attached to a petition filed by the same plaintiff against the same defendants in a separate action concerning the same general subject matter in the same court.

First of all, as stated in *Witzenburg v. State*, 140 Neb. 171, 178, 299 N.W. 533, 537 (1941): "The general rule is that, while a court will take judicial notice of its own records, it will not in one case take judicial notice of the record in another case. *Fassler v. Streit*, 92 Neb. 786, 139 N.W. 628. However, 'There may be cases so closely interwoven, or so clearly interdependent, as to invoke a rule of judicial notice in one suit of the proceedings in another suit.'" The instant case is one on the promissory note between the parties and the judicially noticed case was an action for conversion of security based on the same promissory note and the concurrently executed security agreement which secured the note. The two cases are interwoven and interdependent.

Secondly, the security agreement is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The promissory note and the security agreement were both executed on November 19, 1969. Copies of both were attached to a petition filed in the same court on February 19, 1974, by the same plaintiff against the same defendants. The 1974 petition, filed by the same reputable attorneys representing plaintiff in the instant action, alleged the execution of the note and security agreement by defendants; alleged that the security agreement was executed to secure payment of the note; and alleged that the security agreement was in full force and effect on the date of the filing of the petition. Clearly,

to be the basis of a lawsuit in 1974, the security agreement had to be operative between the parties in 1974. The agreement was operative when executed in 1969, and it had to be operative in February of 1972. The judicially noticed fact — the security agreement — is capable of accurate and ready determination by resorting to a source — a formal petition with attachments — whose accuracy cannot reasonably be questioned. The same plaintiff and the same attorneys give us no reason why that judicially noticed fact is not a fact operative between the parties.

It should be noted that plaintiff, if it did have objection to the judicial notice taken, had procedural remedies available to it of which it did not avail itself. Neb. Rev. Stat. § 27-201(5) (Reissue 1979) provides that, "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Further, if as mentioned in plaintiff's brief, plaintiff was surprised "that the court took such notice for the purpose of receiving the security agreement as evidence and applying its provisions to the facts at hand," plaintiff's motion for new trial could have been based on Neb. Rev. Stat. § 25-1142(3) (Reissue 1979). That specific section provides that a new trial shall be granted "for any of the following causes, . . . (3) accident or surprise, which ordinary prudence could not have guarded against; . . . ." Such a cause must, of course, be sustained by affidavits, as required by Neb. Rev. Stat. § 25-1144 (Reissue 1979). We find that the accuracy and reliability of the security agreement cannot reasonably be questioned under the facts of this case.

In support of our holdings, we note examples of a court taking judicial notice of a specific document in another case.

In *City of Los Angeles v. Waller*, 90 Cal. App. 3d 766, 154 Cal. Rptr. 12, 17 (1979), where the trial court

took judicial notice of an appraisal report in another case, the appellate court stated: "The trial court's remarks during the argument of the motion for new trial indicate that he accepted the exhibit as being accurate and true, the genuineness of the report not really being contested by plaintiff — only the use made of the report in the Warnack action. Under these circumstances, we conclude that the trial judge properly took judicial notice of Mason's Warnack appraisal report as being a genuine document."

In the case of *In Re Southern Land Title Corporation*, 301 F. Supp. 379 (E.D. La. 1968), a reorganization petition was filed by Southern Land Title Corp. before one judge in a district and that case was dismissed. Later, creditors filed an involuntary petition for reorganization, and in determining the status of one creditor, a different judge in the same district took judicial notice of the schedules, stating on page 400: "Finally, the schedules form part of the record in the case before Judge Mitchell, and even if the schedules had not been introduced into evidence, we could take judicial notice of the contents of that record for evidentiary purposes . . . ."

Plaintiff next contends that the trial court erred in finding that the note between the parties had been accelerated before the filing of this case. In this connection, the court found that the note and security agreement were executed contemporaneously and were to be construed together, and that by the terms of the security agreement, plaintiff had the right to declare all obligations secured due and payable immediately whenever it deemed itself insecure. In so finding, the trial court correctly applied Nebraska law. In *Linder v. Terre Haute Brewing Co.*, 139 Neb. 636, 638, 298 N.W. 545, 546-47 (1941), this court held:

"It is also contended that the acceleration provision in the mortgage is insufficient to accelerate the note when the lien of the mortgage has been waived. This court has passed on this question in *Munch v. Central*

*West Public Service Co.*, 128 Neb. 645, 259 N. W. 736, as follows: 'This court has adopted the same view. In *Grand Island Savings & Loan Ass'n v. Moore*, 40 Neb. 686, this court said: "A note and a mortgage securing it, made contemporaneously, are to be construed together. Therefore, where a note is payable on or before a date named and the mortgage contains a provision that in certain contingencies, prior to that date, the mortgagee may elect to declare the whole amount due, *held*, that such provision in the mortgage authorizes the mortgagee upon the happening of such contingencies to proceed not only to foreclose the mortgage but also to enforce the personal liability upon the note." ...'"

This leaves only the question of whether plaintiff did, in fact, accelerate the note by its actions in February and March 1972. The law is clear on this issue. As stated in *United Benefit Life Ins. Co. v. Holman*, 177 Neb. 682, 684, 130 N.W.2d 593, 595 (1964), "We think the true and correct rule is stated in 36 Am. Jur., Mortgages, § 393, p. 884, as follows: '* * * that where the acceleration of the maturity of a mortgage debt on default is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and that until such action has been taken, the provision has no operation. The exercise of the option should be made in a manner clear and unequivocal, so as to leave no doubt as to the mortgagee's intention. The option is effectively exercised by manifesting the fact in such manner as to apprise the mortgagor.'"

The trial court found that defendants were in default in payments of principal continuously from the first payment date of December 19, 1969, up until a lump sum payment of $39,121.01 on May 6, 1971; that plaintiff deemed itself insecure on February 15, 1972; and that plaintiff exercised its option under the security agreement to declare the entire indebtedness immediately due by orally demanding possession of all re-

maining security or payment of the entire balance due, by taking possession of all the remaining security, by demanding, in writing, payment of the entire debt within 5 days as an alternative to sale of the cattle, and by the sale of all the cattle constituting the remaining collateral and the application of the proceeds to the debt obligation.

All these findings of fact are amply supported by the record. As to the finding that plaintiff deemed itself insecure, the evidence presented by plaintiff shows that there was a continuous default in principal payments until May 6, 1971, when the proceeds of the sale of defendants' pastureland in the amount of $39,121.01 were applied to the principal. In addition, plaintiff's officer testified that, in February of 1972, "we just plain told him [defendant Florian Pelster] that we were going to take the cattle, because there weren't enough cattle there that we felt that we were secured . . . ."

Defendant Florian Pelster testified that an agent of plaintiff told him that plaintiff wanted its money or it would take the cows, and that plaintiff did, in fact, take all the remaining collateral. Plaintiff itself offered as evidence a letter dated February 16, 1972, from plaintiff to defendants, which letter includes the sentences, "I also wish to notify you that within the next five days, you have the right to redeem the cattle by paying off the balance of your account in the amount of $46,091.51. Being the principal balance still owed as of February 14, 1972."

There was no further communication between the parties with the exception of one letter received by defendants about a month after the sale of the last of the collateral. Defendant Florian Pelster testified that this letter merely stated the balance due, and that defendants were never notified concerning any further defaults in installment payments. This testimony was not denied by plaintiff, and the totality of the evidence shows that the plaintiff did take affirmative action

evidencing its election to accelerate the debt; that there was no doubt as to plaintiff's intention; and that the fact of the acceleration was manifested in such a way as to apprise defendants of the acceleration.

In summary, there is ample evidence to sustain the fact finding that plaintiff did accelerate the total amount due from defendants and that such total remaining balance became due and owing on or before March 22, 1972, which was the date of the last sale of collateral pursuant to the taking of the collateral in February.

This action was filed on January 31, 1978. We, therefore, affirm the trial court's order that this action is barred by the terms of Neb. Rev. Stat. § 25-205 (Reissue 1979) providing for a 5-year statute of limitations.

AFFIRMED.

COLWELL, District Judge, concurs in result.