IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

BHATT V. PRAGYA, INC.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DHAVAL BHATT AND MEGHA BHATT, FORMERLY KNOWN AS
MEGHAVINI BHATT, HUSBAND AND WIFE, APPELLANTS,

V.

PRAGYA, INC., A NEBRASKA CORPORATION, APPELLEE, AND JAYANTIBHAI PATEL AND
VARSHA PATEL, HUSBAND AND WIFE, THIRD-PARTY PLAINTIFFS, APPELLEES,
AND GREG NEUHAUS, THIRD-PARY DEFENDANT, APPELLEE.

Filed January 4, 2022.    No. A-21-153.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Mark Porto and Ronald Depue, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C, for appellants.

Andrew K. Joyce and McKynze P. Works, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellees Pragya, Inc., and Jayantibhai Patel and Varsha Patel.

Gregory M. Neuhaus, of Neuhaus Law Office, for appellee Greg Neuhaus.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

### INTRODUCTION

Dhaval Bhatt and Megha Bhatt, formerly known as Meghavini Bhatt (collectively the Bhatts), appeal from the order of the district court for Hall County, which entered judgment in favor of Pragya, Inc., a Nebraska Corporation, and Jay and Varsha Patel (collectively the Patels) in this contract dispute. Finding no error, we affirm.

- 1 -

STATEMENT OF FACTS

The Bhatts sold a motel located in Grand Island, Nebraska, in 2005 and sought to purchase another motel in the community. They were acquainted with the Patels and approached them about investing in a motel.

The parties formed Pragya to purchase the USA Inn located on South Highway 281 near Grand Island, Nebraska (the motel). On January 13, 2006, articles of incorporation for Pragya were filed with the Nebraska Secretary of State. The articles authorized Pragya to issue 100 shares of common stock. On that same date, the Patels and the Bhatts executed and approved Pragya's bylaws.

On March 23, 2006, Pragya purchased the motel for $1.2 million. To make the purchase, Pragya borrowed $800,000 from a bank, secured by a first deed of trust on the property, and borrowed $100,000 from another source, secured by a second deed of trust on the property. The Patels paid $340,000 to Pragya, which was applied toward closing costs and the purchase of the property.

Pragya issued 100 shares of common stock on March 24, 2006 (25 shares to each of the Bhatts and 25 shares to each of the Patels). All 100 shares represented by the certificates issued on March 24 remained outstanding at the time of trial, with the Bhatts' original stock certificates being held in escrow by Greg Neuhaus, the attorney who drafted the corporate documents for Pragya, the stock pledge agreement, and the promissory note. Pragya has not issued any additional shares of stock, and none of the stockholders have transferred any shares. Pragya has held no annual meetings and no elections of board members or officers since the initial meeting at the time of incorporation.

The parties also entered into a stock pledge agreement and promissory note, both executed on March 24, 2006. The promissory note and the stock pledge agreement are the only written documents confirming any loan transaction between the Bhatts and the Patels, the Bhatts and Pragya, or the Patels and Pragya. The stock pledge agreement, which pledges all of the Bhatts' Pragya stock as collateral for the promissory note, reads, in part:

WHEREAS, [the Bhatts] have purchased [50] shares of [Pragya] as authorized by the Articles of Incorporation and By-Laws; and

WHEREAS, [the Bhatts] have borrowed from [the Patels] and [the Patels] have loaned to [the Bhatts] the amount of $152,500.00 to purchase said shares of [Pragya] and have executed a Promissory Note in favor of [the Patels], of even date herewith . . .

. . . .

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained and in consideration of the fulfillment upon the part of [the Bhatts] under the aforereferenced Promissory Note, the undersigned does hereby pledge to [the Patels], a total of [50] shares of the common shares of [Pragya] which are now issued and outstanding to [the Bhatts], as security for the payment of [the Bhatts'] Promissory Notes [sic] of even date herewith payable to [the Patels.]

This pledge is on the following terms and conditions:

. . . .

3. In the event that any installment of principal or interest on any of the Promissory Notes [sic] secured hereby is not received by [the Patels] within [30] days after due date, whether by acceleration or otherwise, [the Patels] shall immediately notify [the Bhatts] in writing of the default. If the payment of the installment and interest due has not been made or other default cured within [15] days after giving said notice, [the Patels] shall have the right to declare all installments of principal and interest on the Promissory Note immediately due and payable and shall have the right to immediately foreclose on this collateral in the manner provided by law.

The stock pledge agreement further provides that the Bhatts' stock would be delivered to Neuhaus as escrow agent who would hold the stock until payment in full of the promissory note.

The promissory note provides:

FOR VALUE RECEIVED, the [Bhatts] promise[] to pay to the order of [the Patels] the principal sum of [$152,500] together with interest at the rate of [7%] per year, in annual installments as set forth herein on March 24 of each year beginning March 24, 2007 and continuing thereafter until the full amount is paid. [The Bhatts] agree that all distributions received by [the Bhatts] from [Pragya] after payment of Federal and State income taxes due on said distributions, will be applied to the principal and interest of this note. [The Patels] agree to accept such amounts as full annual payments.

For purposes hereof all payments due and payable herein shall be considered as timely made if made within [30] days of the date they become due and payable. Should [the Bhatts] fail to pay any of the installments when due, the unpaid principal balance shall bear interest at the rate of [10%] per annum during the period of delinquency.

If any one or more of the following events should happen: there should be a default in the payment of interest or an installment of principal due hereunder, which default should continue for a period of [5] days, or [the Bhatts] hereunder should make an assignment for the benefit of creditors, or attachment or garnishment proceedings should be commenced, or receiver be appointed over any property of [the Bhatts] hereof, or proceedings be instituted by or against [the Bhatts] hereof under the Bankruptcy Act, as amended, any legal holder hereof shall have the option, without notice or demand, to declare this Note immediately due and payable.

. . . .

[The Bhatts] hereof waive[] presentment, demand, notice of dishonor and protest.

This Promissory Note is secured by a Stock Pledge Agreement.

The Bhatts resided at the motel and managed the property from March 2006 through approximately April 1, 2014. Dhaval had control over the finances of Pragya and the business. Between June 8, 2006 and July 14, 2009, the Patels received checks written on the Pragya checking account totaling $200,073.08. Dhaval did not inform the Patels whether these checks represented distributions as contemplated by the promissory note or were for some other purpose. The Patels made no inquiry of Dhaval concerning why the checks were being issued. While managing the motel, Dhaval made numerous purchases of a personal nature using Pragya funds, and he made

questionable ATM withdrawals at a local keno bar. The Bhatts made no payments to the Patels from August 2009 onward, through Pragya or otherwise.

After discovering at least some of Dhaval's actions, the Patels came to Nebraska, and the Patels took over management of the motel in April 2014. The Patels listed themselves as the sole shareholders of Pragya on Pragya's corporate tax returns after taking over operation of the motel (schedule K-1's for an amended 2014 tax return show 25-percent ownership by each party; schedule K-1's for original 2014 return and returns from 2015 through 2019 show 50-percent ownership by each of the Patels). On September 4, the Patels sent the Bhatts a notice of default and acceleration of debt. The Bhatts attempted to convene a special meeting of shareholders by sending notice to the Patels' attorney in April 2015, but no meeting was held by Pragya in response to the request.

On May 28, 2015, the Bhatts filed a complaint in the district court, seeking dissolution of the corporation, an accounting for the time period of April 2014 to the present, and appointment of a receiver. In their subsequent amended complaint, the Bhatts added a request for a monetary judgment to their claim for an accounting and also added a claim for reformation of the promissory note.

In their answer to the Bhatts' amended complaint, the Patels raised a number of equitable defenses. In a counterclaim, the Patels alleged several causes of action, including requests for an accounting for a time period ending in April 2014, and for foreclosure of the shares and stock certificates which were the subject of the stock pledge agreement. They asked the court to determine the amount due under the promissory note, and they asked that, in the event strict foreclosure of the shares and stock certificates was not awarded, the court make such other findings as necessary to fully compensate them for losses suffered due to the Bhatts' default on the promissory note. The Patels also brought a third-party complaint against Neuhaus based solely on his status as an escrow agent with regard to the stocks referred to in the stock pledge agreement. They asked that he be ordered to make delivery of the stock certificates in his possession to the Patels.

On January 13, 2016, the Bhatts filed a chapter 7 bankruptcy. The Patels and Pragya were listed as creditors and received timely notice of the bankruptcy. The Bhatts specifically listed the debt from the promissory note on the bankruptcy schedule. The bankruptcy trustee took no action and abandoned all claims between the parties arising out of the Bhatts' Pragya stock, the promissory note, and the stock pledge agreement. The Bhatts received a general discharge from the bankruptcy court at some point prior to trial in the present case.

In October 2017, the Bhatts sought partial summary judgment with regard to the affirmative defenses asserted by the Patels, as well as to the Patels' first cause of action in their counterclaim, for an accounting for a time period ending in April 2014. On March 13, 2018, the court sustained the Bhatts' summary judgment motion in part and overruled it in part. The court found in favor of the Bhatts on some of their arguments as to affirmative defenses raised by the Patels and dismissed their arguments as to other such defenses. The court further found in favor of the Bhatts as to the Patels' first cause of action of their counterclaim. The court determined that as a result of the bankruptcy discharge, the Bhatts have no personal liability for any deficiency under the promissory note and stock pledge agreement; it also found that the other claims asserted by the Patels in their counterclaim were inadmissible to constitute an offset. The court concluded the

order by stating, "All other relief requested but not discussed is hereby denied." On March 28, the Bhatts dismissed without prejudice the claim for an accounting set forth in their amended complaint. The Patels appealed, and this court dismissed for lack of jurisdiction as the district court's order had not disposed of all the claims of all the parties. See Neb. Rev. Stat. § 25-1315(1) (Reissue 2016). We also note that a previous appeal was filed in this case, see *Bhatt v. Pragya, Inc.*, case No. A-18-381, which was disposed of without opinion on May 15, 2018.

Trial was held on the parties' remaining claims on October 1 and 2, 2020. The district court heard testimony from Dhaval and Varsha, who testified primarily through interpreters in the Gujarati language. The court also heard testimony from an accountant, hired by the Patels, and received numerous documentary exhibits offered by the parties. We have summarized the relevant evidence above. Further details regarding the testimony and reports from the accountant will be set forth in the analysis section.

On December 17, 2020, the district court entered judgment on the parties' remaining claims. With respect to the Bhatts' claim for corporate dissolution, the court found the evidence showed that Pragya had continued to fill its corporate function by operating the motel which is its sole business. It determined that the Patels' actions in not holding corporate meetings or in consulting with the Bhatts had not resulted in the corporation being unable to function, and it stated that the Bhatts had other remedies available to pursue and repair any alleged wrongdoing by the corporation. The court also denied the relief requested by the Bhatts in their claim for appointment of a receiver.

With respect to the Patels' counterclaims, the district court determined that the plain language of the stock pledge agreement indicated that the parties entered into an agreement for the Patels to loan the Bhatts funds to purchase stock in Pragya. The court found it "noteworthy that the Patels and not Pragya are parties to the Note." The court also found that the promissory note must be read according to the "plain and ordinary meaning of the words used." The court rejected the Bhatts' argument that the language of the note showed that the parties agreed that payments from distributions by Pragya were to be the sole method of repaying the note. The court stated, "Nothing in the plain language used in the Note indicates that the Patels agreed to forego payments from the Bhatts in the years in which Pragya did not make a distribution." The court specifically found Dhaval's testimony that the Patels agreed to accept payments from Pragya in repayment of the note as the sole method of repaying the note "not credible." However, the court also found "untenable" the Patels' initial position that none of the funds paid from Pragya to them should be applied to the note. The court stated that while the finances of Pragya "are murky and as [sic] corporate governance nonexistent," the motel made money during the years in question and the Patels accepted $200,073.08 from Pragya. The court found the "only sensible explanation for the payments," which were not questioned by the Patels, was that the funds paid were distributions by Pragya.

The district court determined that as 50-percent shareholders, the Patels were entitled to 50 percent of the distributions ($100,036.54), as were the Bhatts, and that the Bhatts' share of $100,036.54 should be considered as payments made by them to the Patels under the language of the note. Accordingly, the court reduced the amount owed by that much. The court also determined that because the promissory note had no due date, it was a demand note. Because the Patels made demand on the note on September 22, 2014, and the Bhatts failed to pay the balance upon demand

in full, the court found that the Bhatts are in default and the note accrued interest at the penalty rate set forth in the note. The court found in favor of the Patels in the amount of $176,804.84 plus interest at 10 percent per year. The court directed judicial foreclosure and sale of the Bhatts' stock certificates of Pragya for the payment of the judgment and fees. Finally, the court ordered third-party defendant Neuhaus to deliver the Bhatts' stock certificates to the Patels.

The Patels filed a postjudgment motion seeking attorney fees and asking the district court to enter an order nunc pro tunc to correct the misstatement of a monetary amount in the court's factual findings. The Bhatts also filed a motion to alter or amend, asking the court to amend the judgment to reverse its finding that the Bhatts are in default on the promissory note and further reducing the remaining amount due on the note. The court entered an amended judgment correcting the misstated monetary amount in its factual findings. The court denied the Patels' motion for attorney fees and also denied the Bhatts' motion to alter or amend judgment. The Bhatts subsequently perfected their appeal to this court.

## ASSIGNMENTS OF ERROR

The Bhatts assert that the district court erred in concluding that they were delinquent on the promissory note, determining the amount due and owing from the Bhatts to the Patels, and authorizing foreclosure of the note.

## STANDARD OF REVIEW

In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony; an appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error. *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020). Similarly, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous. See *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021).

After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021). And, an appellate court resolves a trial court's determination of law independently of the lower court's conclusions. See *Equestrian Ridge v. Equestrian Ridge Estates II, supra*.

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020).

## ANALYSIS

The Bhatts' appeal centers on the district court's determination that they were delinquent in their obligations under the promissory note and that the Patels were entitled to make demand pursuant to the acceleration clauses of the promissory note and the stock pledge agreement, at an increased interest rate from the date of the purported delinquency, and triggering the stock

foreclosure provision. They argue that the promissory note was not a demand note as determined by the court. They also argue that they complied with all financial obligations and deadlines set forth in the note, thus precluding penalties, including foreclosure, pursuant to the terms of the note.

The district court determined that because the promissory note between the parties has no due date, it is a demand note, citing *Erickson v. Newell*, 183 Neb. 641, 163 N.W.2d 286 (1968). The Bhatts argue that the promissory note was not a demand note because (1) the note was not due and payable immediately upon its execution (given that the note provided the first installment was to be paid on March 24, 2007, 1 year after execution of the note, and annually on March 24 thereafter), (2) the note contained an acceleration clause, and (3) the court's interpretation of the note as a demand note rendered meaningless the language providing for payment from corporate distributions.

We need not determine whether the promissory note at issue is a demand note such that it was immediately payable upon demand. The evidence supports the district court's conclusion that the Bhatts were in default after July 2009, and the Patels were entitled to make demand pursuant to the acceleration clauses of the promissory note and the stock pledge agreement.

The evidence at trial showed that between 2006 and 2009, payments from Pragya to the Patels were made totaling $200,077.08. No such payments were made after 2009. The district court determined that these payments were corporate distributions and half of the amount should be applied to the Bhatts' obligation under the promissory note since they were 50-percent owners of the corporation. The Bhatts do not contest this finding on appeal. They argue, however, that there were no other corporate distributions made and the note did not contemplate any source of funds for the Bhatts' repayment obligation other than the Bhatts' share of any corporate distributions. Stated otherwise, the Bhatts argue that the promissory note provided that their share of distributions from Pragya was the "sole source of funds that were to be used to pay down the note." Brief for appellants at 17. Thus, they argue that they were not in default, and the district court erred in finding otherwise and ordering foreclosure of the stock.

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id.* When the terms of a contract are clear, an appellate court interprets the contract according to its terms' plain meaning. *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). Terms of a contract that are clear are given their plain and ordinary meaning as a reasonable person would understand them. *Id.* A contract must receive a reasonable construction and must be construed as a whole. *Id.* If possible, effect must be given to every part of a contract. *Id.*

The Nebraska Supreme Court has held that a promissory note and a security agreement, which were executed contemporaneously, were to be construed together. See *State Security Savings Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702 (1980). That case also provides that an acceleration provision in a security agreement securing a promissory note enters into and becomes a part of the note so that the maturity of the note is advanced in the same manner as the maturity of the security agreement. *Id.*

Here, the district court rejected the Bhatts' argument that the promissory note provided the sole method of repayment of the note was to be from corporate distributions to the Bhatts. The

district court determined that nothing in the plain language of the promissory note indicated that the Patels agreed to forego payments during years in which Pragya did not make distributions. According to the promissory note, the Bhatts agreed to pay the Patels $152,000 plus interest accruing at a rate of 7 percent per year, in annual installments "on March 24 of each year beginning March 24, 2007 and continuing until the full amount is paid." The note further provided, "[The Bhatts] agree that all distributions received by [the Bhatts] from [Pragya] after payment of Federal and State income taxes due on said distributions, will be applied to the principal and interest of this note. [The Patels] agree to accept such amounts as full annual payments." The stock pledge agreement allowed the Patels to notify the Bhatts of default if installments under the promissory note were not received within 30 days after their due date. It further allowed the Patels to foreclose the promissory note if payment was not made or the default cured within 15 days of giving notice. The plain language of the note shows that the parties agreed to apply the Bhatts' share of distributions from Pragya toward the Bhatts' obligations under the note. Although there is nothing in the note stating that this is the sole method of repayment or that no payments are due on the note if there is not an annual distribution, the Bhatts argue that this is the only logical interpretation of the note.

The Bhatts argue that because the promissory note did not provide an annual installment figure to be paid by the Bhatts in years when Pragya did not make shareholder distributions, "it stands to reason that the parties did not intend for there to be one." Brief for appellant at 19. The district court found that Dhaval's testimony that the parties intended that repayment was to be made only in the years in which corporate distributions were made was not credible.

We recognize that the promissory note did not specify an amount of the annual installment to be paid. Nor did the note explicitly state that the Bhatts' shares of Pragya distributions was their sole source of funds for their repayment obligation. The Patels argue, however, that even if the promissory note is interpreted as the Bhatts argue (requiring only payments in years when there were shareholder distributions), the Bhatts were nevertheless delinquent as a result of their failure to make payments on the note from distributions they received from Pragya. We agree. As detailed below, the record contains evidence that the Bhatts used corporate money for the payment of personal expenses and that such use of corporate money should be considered distributions.

The accountant testified about his review, at the Patels' request, of financial records from Pragya including tax returns and bank and credit card statements from 2006 through 2013, looking for "unusual activities, possible personal expenditures." Based on his review of the documents and his training and experience, the accountant testified to his belief that there were personal transactions by the Bhatts paid with corporate funds from 2006 to 2013. The accountant's report, identifying over $500,000 of such possible personal transactions, transactions that he could not specifically verify as reflecting legitimate business activity, was admitted into evidence. The accountant observed that the majority of the credit cards were in Dhaval's name personally (although he thought there might have been one in both Dhaval's name and the corporation's name). The accountant expressed concern about payments being made from a company bank account to a personal credit card, stating that such payments would be deemed either a shareholder distribution, a wage or some other type of personal compensation. He testified further that if payments to a personal credit card were not for salary or other compensation, then they would be classified as either a shareholder distribution or a note receivable from the corporation to that

particular shareholder that would need to be repaid eventually. The accountant was unable to state an opinion to a reasonable degree of certainty as to what amount of Pragya funds was spent for the Bhatts' personal use. We also note that Dhaval's testimony reflects that personal expenses were made using Pragya funds, although it is not possible to determine the exact amount of such personal expenditures based on his testimony.

Neither the Pragya funds used by Dhaval for personal expenses nor the payments directly from Pragya to the Patels were included in the tax returns as shareholder distributions. However, the failure to do so with regard to Dhaval's use of Pragya funds does not change our conclusion that the Bhatts received distributions that should have gone toward the payment of the promissory note. Treatment of the payments from Pragya to the Bhatts as corporate distributions is consistent with the treatment of the payments to the Patels as corporate distributions. Although the record does not allow us to determine how much of Pragya's funds were used by the Bhatts for personal expenses, the record supports a conclusion that some such personal usage occurred between 2009 and 2013 and that these payments to the Bhatts should be treated as shareholder distributions. The record also shows that no payments were made on the promissory note by the Bhatts after 2009. Accordingly, they were in default, and the district court's decision was correct. Although our reasoning differs from that of the district court, it reached the correct result, and we affirm the judgment in favor of the Patels. An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning. *State ex rel. Peterson v. Shively*, 310 Neb. 1, 963 N.W.2d 508 (2021). The district court did not err in concluding that the Bhatts were delinquent on the promissory note, determining the amount due and owing from the Bhatts to the Patels, and authorizing judicial foreclosure and sale of the Bhatts' stock certificates. The Bhatts' arguments to the contrary fail.

CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.