Argued July 12, reversed October 18, petition for rehearing
denied November 28, 1967

## PHILCO FINANCE CO., *Respondent, v.*
## PATTON ET AL, *Appellants.*
### 432 P. 2d 686

*William M. Sloan,* Grants Pass, argued the cause

for appellants. On the briefs were Johnson, Telfer & Sloan, Grants Pass.

*Floyd Hinton,* Portland, argued the cause for respondent. On the brief were Deich, Deich & Hinton, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action on a promissory note brought against the makers Patton and Maxwell and W. E. and Marion Schoenleber, who assumed and agreed to pay it. Defendants Patton and Maxwell appeal from a judgment for plaintiff.

Defendants Patton and Maxwell purchased dry cleaning equipment from Launderette Sales & Equipment Co. on a conditional sales contract for $28,500, of which $2,700 was paid down. They executed their promissory note for the balance.[1] Launderette assigned the note and contract to plaintiff. Thereafter Patton and Maxwell sold the dry cleaning equipment to defendants, W. E. and Marion Schoenleber, who assumed and agreed to pay the note, to perform the contract, and to save Patton and Maxwell harmless. Plaintiff was also a party to the instrument transferring Patton and Maxwell's interest to the Schoenlebers. The transfer agreement contained the following provision:

"IT IS EXPRESSLY UNDERSTOOD AND AGREED, that I, the TRANSFEROR, am in no way released from the conditions, covenants, obligations and liabilities of said instrument and prom-

---

[1] Pre-computed interest in the amount of $6,723.36 was added to the balance making the final balance $32,583.36.

issory note but am still firmly bound as though this instrument had never been entered into and the consent of the assignee to the aforesaid sale never obtained, anything to the contrary, herein contained notwithstanding. * * *."

Plaintiff consented to the assignment upon the following terms:

"Upon the express agreement and understanding that the said TRANSFEROR remains liable on the note and conditional sales contract, chattel mortgage, or lease referred to in the foregoing agreement, and that the said TRANSFEREE assume said obligations and that said instrument is to be and remain in full force and effect and upon all the conditions, covenants, terms, agreements and provisions in the foregoing agreement contained the ASSIGNEE therein mentioned hereby consents to the assignment by TRANSFEROR to TRANSFEREE of TRANSFEROR'S interest in said instrument."

The Schoenlebers encountered financial difficulties. They advised plaintiff that they were unable to meet the payments on the note. Plaintiff extended the time for payment an additional eleven months and reduced the amount of each monthly payment correspondingly. Defendants Patton and Maxwell were not consulted concerning the extension agreement. The condition of the security deteriorated after the extension agreement. The Schoenlebers made two monthly payments after the extension agreement and then defaulted. Sometime later plaintiff waived its security interest in the equipment, vesting title in the Schoenlebers who eventually sold it. About a year after the extension agreement plaintiff filed this action on the note.

The trial court held that the extension agreement did not discharge the obligation of Patton and Maxwell on the note.

The promissory note and the assumption agreement were executed prior to the adoption of the Commercial Code in Oregon. The extension agreement was executed after the Commercial Code was adopted. However, the assumption agreement established the relationship of surety and principal respectively between defendants and the Schoenlebers, the assuming grantees. Consequently, defendants could not be deprived of their rights as sureties by the subsequent extension agreement or by the subsequent change in the statutory law. We must look, then, to the relevant statutes in effect prior to the adoption of the Commercial Code.

The effect of an extension agreement upon the liability of the maker of a negotiable note who has transferred the security to an assuming grantee is left in doubt by our previous cases.

In *Cellers v. Meachem*, 49 Or 186, 89 P 426, 10 LRA (NS) 133 (1907), the court held that an accommodation maker was not discharged from liability by an agreement for the extension of time entered into between the holder and the other maker. The basis for this holding was that under the statute then in effect (ORS 71.119) persons primarily liable upon a note, including accommodation makers, were not discharged from liability by an agreement extending time to another party to the note. ORS 71.119, in enumerating the circumstances under which a negotiable instrument is discharged, did not include discharge as a result

of the execution of an extension agreement.[2] ORS 71.120, on the other hand, provided that a person *secondarily* liable on the instrument is discharged "by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument."[3] Both of these sections were a part of the Uniform Negotiable Instruments Law. The court held that the inclusion of the suretyship defenses in ORS 71.120 and the omission of any reference to such defenses in ORS 71.119 indicated a legislative intent to confine suretyship defenses to persons secondarily liable.

In adopting this interpretation of the Negotiable Instruments Law the court followed the weight of authority, which, according to one writer, is "almost universally criticized."[4] Courts in other states following the weight of authority have employed the same interpretation in mortgage cases involving negotiable instruments, holding that the mortgagor, being a pri-

[2] ORS 71.119. "A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3) By the intentional cancelation thereof by the holder;

"(4) By any other act which will discharge a simple contract for the payment of money;

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

[3] The pertinent part of ORS 71.120 provides as follows:
*How person secondarily liable is discharged.* A person secondarily liable on the instrument is discharged:
"* * * * *

"(6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

[4] Osborne on Mortgages, p. 756 (1951). The minority rule permits a primary party to raise suretyship defenses. The rea-

mary party, is not discharged by an extension agreement entered between the holder of the note and the assuming grantee of the mortgagor.[5] In Oregon, however, the reasoning in *Cellers v. Meachem, supra,* has not been carried over to the cases in which an action is brought against the mortgagor who has transferred the mortgaged land to an assuming grantee.

In at least two cases decided after *Cellers* we have held that an extension agreement entered into between the assuming grantee and the holder of the note discharged the mortgagor-maker and in neither of these cases was any mention made of the character of the note and no exception was stated for cases involving negotiable instruments.[6]

Two other considerations lead to the conclusion that the interpretation of the Negotiable Instruments

---

soning is summarized in Mortgage Guarantee Co. v. Chotiner, 8 Cal2d 110, 64 P2d 138, 144, 108 ALR 1080 (1936):

> "Most writers are in agreement that the situation is either covered by subdivision (4) of section 119 [ORS 71.119 (4)] (providing that the instrument is discharged 'by any other act which will discharge a simple contract for the payment of money') or is an omitted case, being neither the discharge of the instrument (section 119) nor the discharge of a person secondarily liable (section 120) and under section 196 [ORS 71.195] is governed by the law merchant."

(ORS 71.195 provided that "In any case not provided for in this chapter the rules of the law merchant shall govern.")

Osborne approves the minority rule but hastens to add:

> "* * * It may be remarked that the approval of the minority view goes only to the interpretation of the Negotiable Instruments Law as not excluding suretyship rules generally and does not go to the merits of the particular suretyship rule involved." *Id.* at 758.

[5] Osborne on Mortgages, p. 756 (1951).

[6] Hurst v. Merrifield, 144 Or 78, 23 P2d 124 (1933); Peters v. Dietrich, 145 Or 589, 27 P2d 1015 (1934). We see no difference between a mortgagor and a vendee under a conditional sale contract with respect to the application of the suretyship rule of discharge.

Law in *Cellers v. Meachem, supra,* was not intended to be applied in actions against a mortgagor. First, it appears from the briefs in *Hurst v. Merrifield,* 144 Or 78, 23 P2d 124 (1933) that the note executed by the mortgagor was negotiable in character. Second, in the *Hurst* case, the court relied upon *Zastrow v. Knight,* 56 S D 554, 229 NW 925, 72 ALR 379 (1930) for the proposition that the mortgagor and his grantee stand in the relation of suretyship. In the *Zastrow* case, after noting the conflict of authority on the interpretation of Section 119 of the Negotiable Instruments Law in the extension agreement cases, the court adopted the view that the Negotiable Instruments Law did not abrogate the suretyship rule under which an extension of time discharges the mortgagor-surety.

Upon the basis of the foregoing considerations, we have concluded that the court in the *Hurst* and *Peters* cases intended to adopt the suretyship rule of discharge in the mortgage cases and did not regard as applicable the rule laid down in *Cellers v. Meachem* to the mortgagor-surety. The suretyship rule applied in *Hurst* and *Peters* discharging the surety when time is extended to the principal debtor became a part of the Commercial Code in Oregon with the enactment of ORS 73.6060.[7] Thus the suretyship rule of dis-

---

[7] ORS 73.6060 provides as follows:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

"(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

charge in mortgage cases has been continuously in effect in Oregon from 1933 (the date of *Hurst v. Merrifield*) to the present time. The rule has been severely and widely criticized and should be abolished or modified.[8] However, we decline to disturb the rule by a pronouncement in the present case because any change we might make in the rule would apply only to transactions entered into before the effective date of

"(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

"(2) By express reservation of rights against a party with a right of recourse the holder preserves:

"(a) All his rights against such party as of the time when the instrument was originally due; and

"(b) The right of the party to pay the instrument as of that time; and

"(c) All rights of such party to recourse against others."

ORS 73.6060 discharges the surety whether or not the extension of time results in injury to him. We have been unable to find any explanation for the adoption of this strict rule of suretyship in the Commercial Code. The suggestion has been made that the phrase "to the extent that" in the first part of ORS 73.6060 might be construed to limit discharge to the extent of the surety's injury. Note, Suretyship in Article 3 of the Uniform Commercial Code, 17 W Res L Rev 318, 319 (1965). But this is a strained construction and one which we are unable to accept. The New York Law Revision Commission concluded that Section 3-606(1) of the Commercial Code (which became ORS 73.6060) adopted the strict rule of suretyship. In a study of the Commercial Code, the Commission stated:

"The Code, like the U.N.I.L., omits any language limiting the security's discharge to a case where the agreement to suspend rights to enforce against the principal debtor results in prejudice to the surety." 1955 (Vol. 2) New York Law Revision Commission Report 1179.

[8] The most frequent argument made in support of the majority rule is that the creditor's extension agreement has deprived the surety of his right to pay the debt and thereafter bring suit in the name of the creditor against the principal to obtain reimbursement. Osborne on Mortgages, p. 747 (1951), summarizes the objections to such an argument:

"It is recognized that the rule is a just one in cases where the surety can show that actual damage resulted, although

ORS 73.6060 and inasmuch as the parties may have entered into previous transactions in reliance upon the then existing suretyship rule of discharge, we should not modify or abolish that rule as to them.

Plaintiff argues that even if the suretyship rule of discharge is applicable to mortgagors generally, the rule cannot be asserted by defendants in this case because there was no consideration for the extension agreement.[9] Plaintiff relies upon *Hurst v. Merrifield,* 144 Or 78, 90, 23 P2d 124, 129 (1933), where it is said, "A mere request for the extension of the due date of the mortgage debt at the contract rate of interest, and a consent thereto, do not satisfy the essentials of a binding contract within the rule under examination; nor is the payment of interest and part of the principal, after all of it has become due, such a valid consideration for an extension of time as will discharge the mortgagor, though it is sufficient if the

---

even here recovery should be confined to the extent of the damage. And it is further conceded that it might be fair to apply the rule whenever the surety actually attempted to enforce, by tendering payment and demanding subrogation, the rights presumed to have been taken from him by the agreement. But the rule gives a complete discharge without the necessity of proving either the slightest damage or any attempt to invoke the surety's rights. * * * Further, except where the creditor is secured or has other priority rights, the surety's other rights give him a protection so nearly equivalent to that which he could obtain by using subrogation that even if he were deprived of it it should not be sufficient reason to grant a complete discharge. Because he owes the debt himself he may pay and obtain reimbursement. Since he himself is liable for the debt he may pay it in spite of any extension to the principal and then maintain an action for money paid in order to obtain reimbursement."

[9] In order for the rule of discharge to operate, the creditor's promise must be supported by legal consideration. See Osborne, p. 744.

grantee agrees to pay an increased rate of interest in advance."

Plaintiff interprets the foregoing statement as an adoption of the rule applied in some states that an agreement by the debtor to pay interest during the extended period at the same rate called for in the original obligation is not sufficient consideration for the extension agreement.[10] If *Hurst* is to be regarded as the adoption of that view, we can only say that it is not now acceptable and *Hurst* must be overruled on this point. Even if it is agreed that the interest rate will be the same during the extension period, there is consideration and it is binding upon the creditor because:

> "* * * He surrenders his right to immediate payment, and secures the advantage of having his money at interest during the extension period, and the principal surrenders the power to pay the debt at any time and stop the accrual of interest, and acquires a privilege not to pay until the expiration of the extension period."[11]

It is further contended that the extension agreement was not binding upon plaintiff as against the defendants Patton and Maxwell because plaintiff expressly reserved its rights against them in the written agreement by which plaintiff consented to the transfer of the laundry equipment to the Schoenlebers.

The transfer agreement, the pertinent parts of which are set out above, provides that Patton and

---

[10] These courts argue that consideration is inadequate because the debtor is only agreeing to do what he is otherwise bound to do. Abel v. Alexander, 45 Ind 523, 15 Am Rep 270 (1874); Wilson v. Powers, 130 Mass 127 (1880); Harburg v. Kumpf, 151 Mo 16, 52 SW 19 (1899); Rumberger v. Golden, 99 Pa 34 (1881).

[11] Simpson on Suretyship, p. 358 (1950). To the same effect see Arant on Suretyship, p. 291 (1931).

Maxwell are "in no way released from the conditions, covenants, obligations and liabilities" on the note and that they are "still firmly bound as though this agreement had never been entered into and the consent of the assignee [plaintiff] to the aforesaid sale never obtained."

We do not regard this as reserving to plaintiff the right to enter into an agreement to extend the time of the payment which would be binding upon Patton and Maxwell. It is not reasonable to construe the agreement as including defendant's consent to be bound by a completely separate agreement to which they were not to be parties and which might adversely affect their interest.

Finally, plaintiff contends that defendants were compensated sureties making applicable the rule followed in *Christensen, Inc. v. Hansen Co.*, 142 Or 549, 554, 21 P2d 195, 197 (1933) that "actual prejudice is essential to the discharge of a compensated surety by an extension of time, the rule of *strictissimi juris* being inapplicable to said sureties."

It must be conceded that a strong argument can be made for the view that a mortgagor should be regarded as a compensated surety.[20] However, if we accepted that view, we would effect a change in the law only for transactions which were entered into prior to the effective date of ORS 73.6060 (because that section, as we construe it, is applicable to both compensated and uncompensated sureties, discharging them if the holder agrees to extend time to the principal debtor). Since defendants may have relied upon the previous Oregon cases treating a mortgagor as

[20] Osborne on Mortgages, p. 751 (1951) citing 15 U Cinn L Rev 58, 73 (1941); 4 U Chi L Rev 469, 478 (1937); 42 Harv L Rev 712 (1929). But cf., 29 Harv L Rev 314, 317 (1916).

an uncompensated surety in applying the suretyship rule of discharge, we feel that we should not now change the law.

It is our conclusion, then, that defendants were discharged as a result of the plaintiff's agreement to extend the time of payment of the note and therefore the judgment of the trial court must be reversed.