Robert J. TOOMEY and Helen C. Toomey,
Appellants,

v.

David S. CAMMACK, Appellee.

No. 8841.

District of Columbia Court of Appeals.

Argued March 18, 1975.

Decided Oct. 7, 1975.

**454**

Mark P. Friedlander, Sr., Washington, D. C., with whom Mark P. Friedlander, Jr., Washington, D. C., was on the brief, for appellants.

M. Langhorne Keith, Washington, D. C., with whom Kevin P. Charles, Washington, D. C., was on the brief, for appellee.

Before FICKLING, KERN and NE-BEKER, Associate Judges.

PER CURIAM:

Appellee sued appellants to recover on three promissory notes executed in 1963.[1] Appellants in their answer admitted execution of the notes. On appellee's motion the trial court entered summary judgment in his favor in the amount of $98,806.00 in total principal and interest.[2] Appellants assert in this court that the grant of summary judgment was improper in light of defenses which they had raised to the enforcement of the notes. We reverse the judgment.

Appellants' first assertion is that the three year statute of limitations[3] bars most of appellee's claim. The notes in question provided that they were to be repaid in "constant monthly installments" of $350.00, and contained a printed form on which the monthly payments were to be recorded. The holder of the notes was also granted the option of accelerating the entire unpaid principal sum of the notes upon default in the payment of any one installment. Thus it is clear that the notes were installment obligations. Under the decisions of this court, the statute of limitations with respect to a suit for non-payment of such a debt begins to run on each installment as that installment falls due.[4] *Namerdy v. Generalcar,* D.C.App., 217 A. 2d 109, 113 (1966); *Washington Loan & Trust Co. v. Darling,* 21 App.D.C. 132, 140 (1903).

The notes also provided that "[the] unpaid balance of principal, if any, with accrued interest shall be due and payable seven years after date . . . ." Appellee argues, and the trial court agreed, that by operation of that particular language the

---

1. The notes were given in payment for three parcels of real property. Appellee sued as assignee of the payee of the notes. Appellants were co-makers of the notes, but had sold the land and assigned the notes to third parties who assumed the primary obligation of repayment. The other makers of the notes were dismissed from the action because of a prior discharge in bankruptcy.

2. The trial court relied on D.C.Code 1973, § 28:3-307(2), which provides that:
   When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

This provision applies to the instant action although the transaction took place prior to the effective date of the Uniform Commercial Code in this jurisdiction. *United Securities Corp. v. Bruton,* D.C.App., 213 A.2d 892 (1965).

3. D.C.Code 1973, § 12–301.

4. In this case, the first installment of each note was due on January 18, 1964. The final installment payment fell due on December 18, 1970. The instant suit was filed on December 12, 1973. Thus all but the final payment would be barred by the three year statute of limitations.

debt as a whole fell due on December 18, 1970, at the end of the seven years. The trial court ruled accordingly that the statute of limitations did not begin to run until that date, so the action was timely filed as to the entire unpaid balance of the obligation, much of which the maker had failed to pay each month.[5]

■■■ Our task is to construe the notes before us so as to divine the intent of the parties as expressed in the instruments, insofar as possible reading all portions of the notes together. *Charlestown Five Cents Sav. Bank v. Wolf*, 309 Mass. 547, 36 N. E.2d 390 (1941). In our view the construction of the notes urged upon us by appellee is simply inconsistent with their language taken as a whole.[6] As a general rule, an actionable claim accrues, and the statute of limitations begins to run, when a suit thereon could first be maintained to a successful conclusion. *Oklahoma Buick Corp. v. McCall*, 497 P.2d 215 (Okl.1972). The notes at issue here manifestly contemplate that an action could be brought on each installment as it became payable. The provision relied upon by appellee, which states that any unpaid balance was due within seven years of the date of the notes, is explained by the fact that the obligations in question are so-called "balloon" notes; that is, the monthly installments of each note were set at too low a figure to pay the entire obligation during its seven year life.[7] The maker was, however, provided with the option of making monthly payments larger "in any amount" than those stipulated in the note. The disputed provision, therefore, refers to any portion of the final "balloon" payment which might remain unpaid at the end of the life of the notes.

The statute of limitations accordingly bars appellee's claim for all those installments which became due more than three years prior to the institution of this action, and the trial court erred in entering judgment for the entire unpaid balance of the notes.

5. The trial court expressly referred to D.C. Code 1973, § 28:3–122(1)(a) as supporting its ruling. That section provides that a cause of action on a note does not accrue until the day after maturity. This provision of the Uniform Commercial Code, however, does not resolve the question when an installment note "matures". At least one court has interpreted this section of the Code to maintain the common law rule that the cause of action on each installment accrues as it falls due. *Oklahoma Buick Corp. v. McCall*, 497 P.2d 215 (Okl.1972). We need not decide whether Section 28:3–122 applies to the present action or whether it repeals the rule of *Namerdy v. Generalcar, supra*, since as we read the record below appellee and the trial court did not rely on the theory that Section 28:3–122 modified the *Namerdy* rule, but rather concluded that the language of these particular notes made the "installment rule" of *Namerdy* inapplicable.

6. We have no occasion to decide whether a promissory note *could be* drafted to accomplish the result sought here by appellee. We note, however, that if the operative provision were viewed as a waiver by the maker of the note of the protection of the statute of limitations, such a waiver, when contained in the original instrument creating the obligation, is disfavored. *See Munter v. Lankford*, 127 F.Supp. 630 (D.D.C.1955), *aff'd on other grounds*, 98 U.S.App.D.C. 116, 232 F.2d 373 (1956). Any such waiver must also be stated clearly and unambiguously. *Gelman v. Public National Bank*, 126 U.S.App.D.C. 281, 377 F.2d 160 (1967).

We do not accept appellee's argument that we should, as a matter of commercial and judicial policy, allow drafters of long-term installment notes to postpone the running of the statute of limitations until the final maturity date of the obligation. The holder of such a note is not forced by the installment rule, as appellee asserts, to file suit on every missed payment in order to protect his rights. The statute of limitations itself allows three years, and twelve years if the obligation is under seal, before suit must be brought. D.C. Code 1973, § 12–301. In addition, the parties may agree, after default has occurred, that the obligor will waive the protection of the statute of limitations during such period that the holder of the notes agrees to forbear from suit. *Noel v. Baskin*, 76 U.S.App.D.C. 332, 131 F.2d 231 (1942).

7. Thus, for example, on these notes which were in the face amount of $35,678.39, the total of 84 (12 × 7) monthly payments would amount to only about $29,500, leaving some $6,000 unpaid principal due at the end of seven years.

Two other issues have been raised by appellants on this appeal. They claim that an issue of material fact exists as to whether the balance due under the notes was accelerated more than three years prior to the institution of the instant action, thus beginning the running of the statute of limitations.[8] They urged in the trial court that a letter written to them by appellee's counsel shortly after appellee's purchase of the notes constituted an election to accelerate the notes on the first default, and that acceleration took place when default occurred in 1968 or 1969. The letter stated that although the notes had been assigned to third parties, appellee would "look to" appellants for payment in the event of default. The trial court properly ruled that the acceleration clause did not become effective unless exercised after default, and that no "anticipatory acceleration" took place.[9] See Gelman v. Public National Bank, supra.

Appellants' final contention is that they became sureties when the third parties assumed the notes, and were discharged of their obligation by an agreement reached between appellee and the assignees in 1968 that the former would accept payment of interest only. The trial court correctly rejected this argument. Even if the agreement amounted to an extension of time which would discharge a surety in a jurisdiction which recognizes the doctrine of discharge, it is the settled common law of the District of Columbia that the maker of a note does not become a surety by assigning the obligation unless all three parties so agree, and in the absence of such agreement an extension of time for payment by the holder does not discharge the maker.[10] *De Leon v. Rhines,* 64 App.D.C. 73, 74 F.2d 477 (1934); *Wolfe v. Murphy,* 47 App.D.C. 296 (1918).

The judgment is reversed and the case remanded with directions to enter judgment for appellee in the amount of that portion of the obligations sued upon which is not barred by the statute of limitations.

*So ordered.*

---

8. This defense, if successful, would bar *all* of appellee's claim.

9. Appellants argue in this court that although they received no notice of an acceleration of the obligation the court should presume from the length of time the notes were in default before suit was brought and from the fact that they were turned over to appellants' attorney for appropriate action, that an acceleration in fact took place. Alternatively, appellants argue that the facts relevant to acceleration are peculiarly within the knowledge of appellee, and for that reason alone summary judgment was improper. *Ad-* erholdt v. Lewis, D.C.App., 187 A.2d 488, 489 (1963); *White v. Luber,* D.C.Mun.App., 144 A.2d 774, 776 (1958). This contention is without merit, for intent to exercise an optional acceleration clause must be manifested in clear and unequivocal conduct in order to render the obligation due and payable. *Gelman v. Public National Bank, supra* at 283–84, 377 F.2d at 168–69.

10. The common law rule appears to have been altered by D.C.Code 1973, § 28:3–606(1)(a). That provision, however, does not apply to the instant action. *See Philco Finance Co. v. Patton,* 248 Or. 310, 432 P.2d 686 (1967).