**H.C. CLARK IMPLEMENT CO., INC.,**
**Plaintiff and Appellee,**

v.

**Arnold WIEDMER, Defendant**
**and Appellant.**

No. 15147.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1986.

Decided June 25, 1986.

Harvey A. Oliver, of Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for plaintiff and appellee.

Wesley D. Schmidt, of Hopewell & Schmidt, Sioux Falls, for defendant and appellant.

WUEST, Justice.

This is an appeal from a judgment in an action for claim and delivery.

On August 23, 1979, appellant Arnold Wiedmer (Wiedmer) purchased a combine and attachments from appellee H.C. Clark Implement Co., Inc. (Clark) under a motor vehicle installment sales contract. The contract was renewed and provided for two payments of $8,186.64, the first due on December 15, 1984, and the second on December 15, 1985. Wiedmer failed to make the first payment; but, instead, sent to Norwest Bank, the assignee of the contract, a document which purported to pay the entire debt by transferring to Norwest Bank 1,364 bushels of wheat.

The sales contract contained an acceleration clause which allowed Clark to declare the entire debt immediately due and payable under certain terms and conditions upon Wiedmer's default.* On February 8,

---

* The clause provides: "Upon the occurrence of any event of default under paragraph 9 above and at any time thereafter until the event of default has been cured to your satisfaction, you may exercise any one or more of the following rights and remedies: (i) you may declare all unpaid Obligations to be immediately due and payable, and the same (less the unearned portion of the finance charge computed as provided in paragraph 5 on the other side of this agreement as of the date of your demand), or, if I do not pay the Obligations when you make demand and you subsequently (1) sell the Property or (2) bring suit against me to collect the Obligations, then as of the earlier of the date of (1) or (2) shall thereupon be immediately due and pay-

1985, Clark commenced an action for claim and delivery of the secured property under the provisions of SDCL ch. 21–15. On February 11, 1985, the circuit court issued an order requiring Wiedmer to show cause why he should not be required to deliver the combine and attachments to Clark. Thereafter, the Dewey County Sheriff filed a certificate of substitute service indicating the pleadings were served upon Wiedmer's son, a person over the age of 14, at Wiedmer's residence. Unbeknownst to Clark, however, the sheriff had actually served Wiedmer's son with the pleadings at a location other than Wiedmer's residence, which is contrary to SDCL 15–6–4(e).

On February 20, 1985, a hearing was held regarding the show cause order. Clark appeared through counsel, but Wiedmer did not appear either personally or through a legal representative. Based upon the evidence introduced at the hearing, the circuit court entered findings and an order requiring Wiedmer to turn over to Clark the combine and attachments. Some time later, Wiedmer made a motion to quash the service of the summons and complaint, which the court granted. Thereafter, Clark had the summons and complaint properly served upon Wiedmer.

On May 15, 1985, a trial was held regarding the claim and delivery action, at which time Wiedmer was represented by legal counsel. At the conclusion of the trial, the court entered findings of fact, conclusions of law, and a judgment, requiring that the collateral be returned to Clark. Following the entry of judgment, the combine and attachments were recovered by Clark and, after notice, the property was sold. Wiedmer appeals from the trial court's judgment.

The issue on appeal is whether the language of the acceleration clause requires that a demand for payment be made upon Wiedmer prior to the institution of suit.

The language of the acceleration clause stating, "[u]pon the occurrence of any event of default ... you may exercise able, without any demand for payment or other

any one or more of the following remedies ...," indicates that the clause is of a type commonly referred to as an "optional" acceleration clause where an entire debt does not automatically become due upon default. Some action is required by which the creditor affirmatively and unequivocally makes known to the debtor his intention to declare the whole debt due. *Glassmaker v. Ricard*, 23 Wash.App. 35, 593 P.2d 179 (1979); *State Sec. Sav. Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702 (1980); *Toomey v. Cammack*, 345 A.2d 453 (D.C.App.1975).

The creditor cannot in his own mind effectively exercise the option to declare the whole principal due; he must communicate his decision to the debtor, or manifest it by some outward affirmative act sufficient to constitute notice of his election, such as service of notice of attorney's fees ..., the filing of suit for the entire debt ..., written notice of his exercise of the option ..., or by advertising under the power of sale, to collect the entire principal[.]

*Chrysler Credit Corp. v. Barnes*, 126 Ga. App. 444, 451, 191 S.E.2d 121, 126 (1972) (citing *Lee v. O'Quinn*, 184 Ga. 44, 45, 190 S.E. 564, 565–66 (1937)). "The institution of a suit for the whole debt is, of course, the most solemn form in which the holder can exercise his option. This is well recognized and it is, hence, generally held that the institution of a suit ... is notice of the most unequivocal character that the holder wishes to avail himself of his option for acceleration." Annot., 5 A.L.R.2d 968, § 5 at 975 (1949).

By instituting the suit for claim and delivery, Clark has unequivocally exercised its option to accelerate the debt. Wiedmer contends, however, that the acceleration clause clearly requires that a demand for payment be made prior to suit. Wiedmer argues: "The contract states that the remedy upon default is to declare all of the obligations due as of the date of demand. If the demand is made and the Seller subsequently brings suit, then no further demand need be made. The demand, there-

notice to me...."

fore, must be made before filing suit." Regarding the issue of demand for payment in the context of a promissory note, the court in *Frei v. Hamilton*, 123 Ariz. 544, 546, 601 P.2d 307, 309 (1979), states: "To validly exercise an option to accelerate, the majority of jurisdictions require the payee (1) to present the note for payment and demand payment and (2) to affirmatively exercise the option." Similarly, it is stated in Annot., 5 A.L.R.2d *Bills & Notes* § 6 (1948):

> Presentment and demand for payment are not necessary in order to charge the maker or acceptor of a negotiable instrument generally; the holder may nevertheless maintain an action thereon. The situation, however, is different where the holder of a negotiable instrument containing an optional acceleration clause wants to exercise his option. He must as a condition precedent to the exercise of his option present the instrument and make a formal demand upon the payor to pay the installment due.

While this authority is distinguishable from the present situation, inasmuch as it deals with negotiable instruments, it is nevertheless of some assistance.

■ The language of the clause is ambiguous at best, and it should be noted that under South Dakota law any ambiguities are construed against the drafter of the instrument. *Hicks v. Brookings Mall, Inc.*, 353 N.W.2d 54 (S.D.1984); *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676 (S.D.1977). Although inartfully drafted, the acceleration clause in this case does require demand for payment prior to suit.

■ The record shows that Norwest Bank, appellee/assignor, sent Wiedmer a past due notice on December 24, 1984. In response to that notice, Wiedmer issued a note for 1,364 bushels of wheat, redeemable at a value of $16,373.28, three times its actual value, purporting to be payment in full. While the original service of process was quashed by the trial court, Wiedmer stated he did, in fact, receive the summons and complaint. This complaint stated that

Clark has exercised its option to declare the entire sum immediately due and payable and that Wiedmer was indebted for $15,938.24, the full amount then due. The trial court held this complaint satisfied the provisions of the acceleration clause requiring demand before commencement of suit. We agree that the trial court was correct in holding the complaint constituted a demand for the entire amount. It notified Wiedmer that Clark was demanding the entire debt and not just the first installment. If Wiedmer had wanted to pay the debt, he could have done so before he was properly served the second time. He has never made any offer to pay any of the debt, except to issue the invalid note payable in wheat. Indeed, he testified he had no way to pay the debt except by issuing the invalid note which was not payment at all but merely a promise to pay wheat.

The judgment of the trial court is affirmed.

FOSHEIM, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

That Wiedmer is a pauper or a millionaire—that he can or cannot pay is irrelevant. That he offered to pay in wheat at a nonmarket price is immaterial. The sole question is: In the *instant suit*, was Wiedmer entitled, in law, by virtue of the terms in the contract, to a Notice of Acceleration or a Formal Demand for the entire sum due under the contract *before* suit was instituted?

The trial court so held; the Supreme Court thinks so; but both arrive at the conclusion that a botched lawsuit (insufficiency of service of process) constituted a demand for the entire amount. If the first lawsuit was a nullity (and it was), how can it produce good fruit? How can it be used as a basis for further legal action? A lawful notice cannot be birthed from the womb of a quashed Summons and Com-

plaint.[1] Strip the majority opinion's basic tenet from it, namely that Wiedmer received notice of demand from the quashed lawsuit, perforce it is apparent the majority opinion has no sound basis for its decision.

These contracting parties specifically decided the consequences of a breach of contract. Clark Implement was to have certain options upon default. If parties stipulate in a contract to the consequences of a breach of contract, such stipulation is controlling and excludes other consequences, providing it is reasonable. *Mid-America Marketing v. Dakota Industries*, 281 N.W.2d 419 (S.D.1979). Here, the parties agreed and stipulated that the remedy of acceleration of the entire amount could take place. However, a condition precedent attached and that condition was that, upon default, Clark Implement would have to make demand upon Wiedmer for the entire price *before* it brought suit or sold the property. Is it not reasonable that before a purchaser's equity is wiped out or before he finds himself in a lawsuit, he is entitled to be notified that suit will be instituted against him if he does not come up with the entire amount owed pursuant to an acceleration clause?[2] Simply put, if acceleration was to be exercised in this case, it had to be exercised by notice. A Notice of Acceleration can help a party cure a default and trigger understanding between parties rather than litigation. We face a litigation explosion, as it is, in our trial and appellate courts today. Clark Implement could have sent out a letter but did not do so. No Notice of Acceleration or demand for payment of the entire price was ever made. This is firmly established in the record of this case.

The trial court determined, which this Supreme Court now affirms, that a notice, by way of demand, had to be made for payment prior to suit. This Court now affirms the trial court's decision that this notice or demand resulted from Wiedmer's reading of a Summons and Complaint which was improperly served and thereafter quashed and set aside. Therein, do I peg analytical exception to the rationale of the majority opinion. You cannot, by implication, extend or restrict a contract to mean something other than that which was intended by the parties. *Kohlman v. Cahill*, 301 N.W.2d 664 (S.D.1981). And you cannot resurrect a lawsuit which has been declared to be a nullity, and build from it a good and sufficient legal notice in law.

In closing, the benefits of acceleration are great for he who accelerates, but it creates a tremendous burden upon those who must abide by the acceleration. Surely, if notice or formal demand is a right under a contract as a condition precedent, it should govern; the burden of notice is slight compared to the important, and sometimes drastic action rising from acceleration.

---

1. Quash is to "overthrow; to abate; to vacate; to annul; to make void; *e.g.* to quash an indictment." *Black's Law Dictionary* 1120 (5th ed. 1979). It is as if it never existed. It abrogates ab initio. To thus base a legal notice upon something that does not exist in law is irreconcilable. It is a conceptual anomaly.

2. Page eight of Clark Implement's brief states: "H.C. Clark must provide Mr. Wiedmer notice of its election to accelerate payments by making demand upon Mr. Wiedmer to pay the entire indebtedness. The type of notice is not specified in the contract, but H.C. Clark agrees that some affirmative act must apprise Mr. Wiedmer that the election has taken place. This notice may be in the form of some affirmative act or by the commencement of a lawsuit." All parties, the trial court, and this Court apparently agree that there was never any notice *unless* the commencement of the quashed lawsuit suffices as a notice.