PARTNERSHIP PLACEMENTS,
INC., et al., Appellants,

v.

LANDMARK INSURANCE
COMPANY, Appellee.

Nos. 95–CV–1682, 97–CV–654.

District of Columbia Court of Appeals.

Argued Feb. 20, 1998.
Decided Dec. 30, 1998.

838

Robert M. Gilchrest, Los Angeles, CA, with whom Michael P. Gurdak, Washington, DC, Lester O. Brown, Los Angeles, CA, and Steven J. Mintz, Washington, DC, were on the brief, for appellants.

Steven R. Migdal, Annapolis, MD, for appellee.

Before TERRY and RUIZ, Associate Judges, and KING, Senior Judge.*

TERRY, Associate Judge:

Appellants[1] filed a complaint against appellee Landmark Insurance Company after Landmark refused to defend certain parties in a lawsuit filed against them in 1987.[2] The trial court, ruling that appellants' claims were barred by the statute of limitations, granted summary judgment in favor of Landmark. Appellants noted an appeal (No. 95–CV–1682), which was fully briefed by both sides and placed on the calendar for oral argument. Three days before the date on which the case was to be heard, appellants filed a motion to postpone the argument so that they might file a motion in the trial court to vacate the judgment under Super. Ct. Civ. R. 60(b). We granted the request for postponement (quite reluctantly, because it came so late), and appellants filed their Rule 60(b) motion. The trial court denied it on the ground that it was untimely, and appellants noted a second appeal (No. 97–CV–654), which we consolidated with the first.

* Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.

1. The named appellants are Partnership Placements, Inc. ("PPI"), Tyler House Apartments, Ltd. ("THAL"), Tyler Housing Fund, Ltd. ("THF"), Triad Investments Fund ("Triad"), Deane Earl Ross, and A. Bruce Rozet.

2. Appellants' complaint also named Home Insurance Company ("Home") and International Surplus Lines Insurance Company ("International") as defendants. The claim against Home was settled and dismissed in the trial court. According to a footnote in appellants' brief, the claim against International has also been settled, leaving Landmark as the only appellee.

Before this court appellants make four arguments. First, they contend that Landmark waived the statute of limitations. Second, they argue that Landmark is estopped from raising the statute of limitations as a defense. Third, they maintain that Landmark acknowledged a duty of coverage under D.C.Code § 28–3504 (1996), thereby removing the case from the statute of limitations. Finally, they contend that the court erred in denying their Rule 60(b) motion. We reject all four arguments and affirm both the summary judgment and the denial of the Rule 60(b) motion.

## I. FACTUAL BACKGROUND

In 1986 Landmark issued an insurance policy to the National Investment Development Corporation ("NIDC")[3] providing general liability coverage for 132 properties throughout the United States from January 1, 1986, to January 1, 1987.[4] One of the properties covered by the policy was the Tyler House Apartments, located in the District of Columbia. On March 3, 1987, a group of Tyler House tenants filed a multi-count complaint[5] in the Superior Court of the District of Columbia ("the Tyler House litigation") against Tyler House Apartments, Ltd. ("THAL"), Partnership Investor Services, Inc. ("PISI"), Beltway Management Company ("Beltway"), and two individuals, Stephen D. Moses and John L. Wagner. THAL and PISI subsequently declared bankruptcy,[6] and the case was eventually settled.

On March 19, 1987, sixteen days after the complaint was filed, NIDC notified Landmark of the Tyler House litigation and requested coverage under the general liability policy. Mark Heath, Landmark's litigation supervisor, denied coverage and any duty to defend in a letter dated June 3, 1987.

More than two years later, on July 14, 1989, Beltway filed a complaint against Landmark in the United States District Court for the District of Columbia ("the Beltway litigation") seeking a declaratory judgment that Landmark had a duty to defend it under the same policy that is at issue in this case.[7] On September 19, 1990, the court ruled in favor of Beltway, holding that Landmark indeed had such a duty. *Beltway Management Co. v. Lexington–Landmark Insurance Co.*, 746 F.Supp. 1145 (D.D.C.1990).

Apparently prompted by that decision, Scott Carr, who at that time was counsel for NIDC and all six appellants, telephoned Mark Heath on November 6, 1990, to request coverage once again for the Tyler House litigation. In that conversation, according to Carr's affidavit, Heath told Carr that Landmark would provide defense costs to appellants and seek contribution from other insurers. However, after Carr sent Heath two letters attempting to confirm these statements, Heath retreated from his position and wrote in a letter dated December 4, 1990, that Landmark would deny coverage to Ross and Rozet but that it might have a duty to defend NIDC, PISI, and Stephen Moses.[8] At the same time, Heath noted that those parties also had other insurance policies that would cover the Tyler House litigation. On August 21, 1992, Landmark issued a check payable to NIDC in the amount of $50,000. The words "good faith payment of legal expenses" appear on the face of the check.

In the meantime, Heath contacted other insurance companies to seek contribution from them. When those carriers refused to

---

3. NIDC is the parent company of appellant Partnership Placements, Inc.

4. Appellants PPI, THAL, and THF are all named insureds in the policy. Triad and the two individual appellants, Ross and Rozet, are not named in the policy.

5. The complaint alleged breach of the implied warranty of habitability, breach of the statutory warranty of habitability, negligence, and public nuisance.

6. THAL, the only appellant here that was a named defendant in the Tyler House litigation,

filed for bankruptcy and ceased to be an active party when an automatic stay was issued by the court on June 5, 1989.

7. None of the appellants in this case participated in the Beltway litigation.

8. Moses later filed suit against Landmark in California for coverage in the Tyler House litigation. None of the six appellants joined in that action, which Moses lost on summary judgment in December 1993.

contribute, Heath asked Steven Migdal, counsel for Landmark, to draft a complaint against them, seeking a declaratory judgment that the other carriers were liable for their *pro rata* share in defending the Tyler House litigation. The complaint was drafted sometime in 1991, but it was never filed. Later, after the present suit began, appellants sought to depose Mr. Migdal in order to obtain more information about the draft complaint. However, after hearing testimony from Mr. Migdal on May 19, 1995, that he did not recall either writing the complaint or sending it to anyone,[9] the Circuit Court for Anne Arundel County, Maryland, issued a protective order barring the deposition. Some time thereafter Mr. Migdal was deposed in a case that was pending in California.[10] In the course of that deposition, he admitted that he took part in preparing the draft complaint. Migdal also testified in the California trial.

On June 1, 1995, appellants deposed Mark Heath. Because Heath said during his deposition that certain documents were missing from his claim file, appellants requested discovery of his complete file activity notes on June 6. On June 22 Landmark sent Heath's notes, partially redacted to exclude privileged material, to counsel for appellants. They did not object to the omissions from the notes until the complete unredacted notes surfaced in 1996 in the California litigation. According to an affidavit from Philip Cook,

counsel for appellants in the California case, Landmark provided him with a full copy of the notes. Some of the portions which had been redacted in the District of Columbia litigation (the instant case) revealed that Landmark recognized it had a duty to defend appellants in the Tyler House litigation.[11]

## II. THE SUMMARY JUDGMENT

Landmark filed a motion for summary judgment, asserting *inter alia* that appellants' claims were barred by the statute of limitations.[12] After a hearing, the trial court granted the motion. The court ruled that the three-year statute of limitations on a claim for breach of an insurance contract begins to run when the insured receives notice of rejection of a claim under the policy. Landmark had denied coverage on June 3, 1987, in Mr. Heath's letter. The court therefore concluded that any action against Landmark should have been filed by June 3, 1990. Because appellants did not file suit against Landmark until September 2, 1994, the court held that their complaint was barred by the statute of limitations.

The trial court rejected appellants' contentions that Landmark was estopped from raising the statute of limitations and that Landmark had acknowledged a duty to provide coverage. First, the court concluded that there was no estoppel because appellants had not shown any misleading conduct that oc-

9. Mr. Migdal testified:

> I had no communications with regard to this complaint. I don't even know if I drafted it. I mean it has the stationery on it, but it's a blank complaint that was never filed. It was not transmitted by me.

10. On February 8, 1996, five of the six appellants (PPI, THF, Triad, Ross, and Rozet) filed an action against Landmark, a California corporation, in the Superior Court of Los Angeles County. *Partnership Placements, Inc. v. Landmark Insurance Co.*, No. BC–144143. (THAL was not a plaintiff because it was already in bankruptcy proceedings.) The complaint sought "compensatory and punitive damages from Landmark for its bad faith conduct towards them, Landmark's breach of its promise to defend and pay defense costs, its fraudulent behavior used to induce the policyholders not to file suit earlier, the breach of its duty to the policyholders as their fiduciary, and its violation of California Insurance Code Section 790.03(h)."

11. Cook's affidavit stated in part:

> Evidence of Landmark's promise of a defense in the File Activity Notes includes the following:
> a. On Exhibit 9, at page 2136, an entry dated July 16, 1991, in Mr. Heath's handwriting states, "We recognize the duty to defend."
> b. On the same page, in an entry date July 18, 1991, Mr. Heath wrote, "counsel will [file] dec action if nothing further." Referring to another insurance company who is also on the risk, Mr. Heath then wrote, "[The other insurer] has disclaimed erroneously."
> c. On Exhibit 9, at pages 2128–2129, Mr. Heath made an entry dated February 5, 1992, that states, "[policyholders' counsel] Judith Bartnoff called .... I did indicate Landmark had a duty along with all carriers to defend."

12. Landmark had originally raised this defense in its answer to the complaint.

curred before the statute of limitations expired.[13] Second, the trial court concluded that none of the writings proffered by appellants were sufficient under D.C.Code § 28–3504 to serve as an acknowledgment of liability.

Under Super. Ct. Civ. R. 56(c), a trial court may grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C.1994) (en banc). Although this court conducts its own independent review of the record, we apply the same substantive standard as the trial court. "Accordingly, we review the record in the light most favorable to the party opposing the motion and resolve against the moving party any doubts about the existence of a material factual dispute." *Noonan v. Williams,* 686 A.2d 237, 244 (D.C. 1996) (citation omitted).

█ It is undisputed that appellants did not file their complaint within the three-year limitation period prescribed by statute for claims of this kind. D.C.Code § 12–301(7) (1995); *see Dillard v. Travelers Insurance Co.,* 298 A.2d 222, 224 (D.C.1972); *Fowler v. A & A Co.,* 262 A.2d 344, 347 (D.C.1970). Nevertheless, appellants contend that their claims are not barred because Landmark waived the statute of limitations, because it is estopped from asserting the defense,[14] and because it acknowledged a duty to defend, thereby removing the case from the statute of limitations.

## A. Did Landmark waive the statute of limitations?

█ "Under modern law, a waiver of the affirmative defense of the statute of limitations means to abandon, renounce, repudiate, or surrender the privilege or right under such statute of limitations." 1 C. CORMAN, LIMITATION OF ACTIONS, at 175 (1991).[15] In cases in which a party alleges waiver of a limitation period by an insurance carrier, "[t]he general rule is that [the] insurance company is not deemed to have waived [the] period ... unless the company has conceded liability and some discussion of a settlement offer has occurred." *Bailey v. Greenberg,* 516 A.2d 934, 938–939 (D.C.1986) (footnote omitted); *see Toomey v. Cammack,* 345 A.2d 453, 455 n. 6 (D.C.1975).[16]

█ Appellants rely on several documents and a conversation to support their claim that Landmark waived the statute of limitations: (1) the November 6, 1990, telephone conversation between Scott Carr and Mark Heath; (2) the December 4, 1990, letter from Heath to Carr; (3) correspondence from Landmark to other insurance companies requesting contribution; (4) the unfiled draft complaint; and (5) the check for $50,000 payable to NIDC, bearing the notation "good faith payment of legal expenses." We do not think that these bits of evidence, even taken all together, are sufficient to make a *prima facie* showing that Landmark clearly and unequivocally intended to waive the statute of limitations.

13. In addition, the court denied appellants' request to reopen discovery in order to "unearth" Mark Heath's notes "revealing what ... Heath was thinking between 1987 and 1990," because any such notes, "if not communicated to [appellants] at the time, could not have lulled [them] into foregoing the filing of suit." Appellants do not contest this ruling on appeal, presumably because they gained access to the notes through discovery in the California litigation.

14. Both waiver and estoppel can be invoked to preclude a party from asserting the statute of limitations as an affirmative defense. *See Kidwell v. District of Columbia,* 670 A.2d 349, 353 (D.C.1996); *Feldman v. Gogos,* 628 A.2d 103, 104–105 (D.C.1993).

15. The statute of limitations may be waived either by express agreement between the parties or simply by a failure to assert it, since it is an affirmative defense. *See, e.g., Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495, 502 n. 10 (D.C.1994) (citing cases); *Feldman v. Gogos, supra* note 14, 628 A.2d at 104–105. Landmark timely asserted the statute of limitations as a defense to appellants' complaint.

16. *Diamond Service Co. v. Utica Mutual Insurance Co.,* 476 A.2d 648 (D.C.1984), on which appellants rely, is distinguishable from this case because in *Diamond* the appellants claimed waiver of the notice provision of an insurance contract, not waiver of the statute of limitations. *See Bailey v. Greenberg, supra,* 516 A.2d at 939; *Toomey v. Cammack, supra,* 345 A.2d at 455 n. 6.

Heath's letter to Carr stated only that Landmark might possibly have a duty to defend NIDC, PISI, and Stephen Moses in the Beltway litigation,[17] none of whom are appellants in this case; more tellingly, the letter said that Landmark would *not* defend appellants Ross and Rozet. The correspondence between Heath and other insurance companies, the unfiled draft complaint, and the $50,000 check payable to NIDC [18] were all addressed to parties other than these appellants and did not contain a clear statement that Landmark intended to pay the costs of appellants' defense. The telephone conversation between Carr and Heath, in which Heath allegedly stated that Landmark would pay appellants' defense costs, is the sole piece of evidence suggesting that Landmark might have intended to relinquish, at least in part, its right to assert the statute of limitations. Other evidence shows, however, that Landmark later repudiated any obligation to defend two of the appellants—Ross and Rozet—and never again acknowledged that it would defend the others. We are not persuaded that one brief statement by an agent of Landmark, even if credited by a jury, would be sufficient, in the factual context of this case, to show that Landmark clearly and unambiguously conceded liability or otherwise waived its right to assert the statute of limitations. *See Toomey, supra,* 345 A.2d at 455 n. 6. We therefore conclude that appellants have not made a sufficient showing to survive a motion for summary judgment on their claim of waiver.

**B.** *Is Landmark estopped from asserting the statute of limitations?*

Turning to appellants' argument that Landmark is estopped from asserting the statute of limitations, we agree with the trial court that appellants failed to show that they detrimentally relied on Landmark's con-

duct. *See Cassidy v. Owen,* 533 A.2d 253, 255 (D.C.1987). A defendant is estopped from raising the statute of limitations as a defense if that defendant has "done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him." *Property 10–F, Inc. v. Pack & Process, Inc.,* 265 A.2d 290, 291 (D.C.1970); *accord, Spellman v. American Security Bank,* 504 A.2d 1119, 1124 (D.C. 1986); *see also Jones v. Government Employees Insurance Co.,* 621 A.2d 845, 847 (D.C.1993); *Hornblower v. George Washington University,* 31 App. D.C. 64, 75 (1908) ("Defendant must have done something that amounted to an affirmative inducement to plaintiffs to delay bringing action"). In this case, even assuming that all the facts alleged by appellants are true and supported by the record, appellants have failed to show any misleading conduct by Landmark or any of its agents that occurred *before they had already allowed the statute of limitations to lapse.* Because their own inaction kept them from filing a timely complaint, they cannot say that the conduct of Landmark, occurring after the limitation period had run, somehow lulled them into not filing. *See Property 10–F, supra,* 265 A.2d at 291.

We are not persuaded by the argument that the four-year California statute of limitations had not yet expired when Mark Heath told Scott Carr that Landmark would provide defense costs to appellants. Even assuming that such evidence might be sufficient to sustain an estoppel argument, it would be valid only in California, because the statute had already run in the District of Columbia when Heath and Carr had their conversation. Whether the California statute of limitations was waived might be a material issue in California, but not in the District of Columbia.

---

17. Heath's exact words were: "It would appear that Landmark would have some duty to defend three of these defendants, that being [NIDC, PISI, and Moses,] for this matter."

18. Even if that payment had been made to appellants, rather than NIDC, it would not necessarily have shown that Landmark waived the statute. *Tubongbanua v. United States,* 223 F.Supp. 379 (D.D.C.1963), and *Dulberger v. Lippe,* 202 A.2d 777 (D.C.1964), cited by appellants, hold that part payment of an existing debt does not waive the statute of limitations for filing an action for the money owed, but merely interrupts the running of the limitation period. *Tubongbanua,* 223 F.Supp. at 381; *Dulberger,* 202 A.2d at 778. Our reading of these two cases, moreover, indicates to us that they both involved estoppel rather than waiver.

## C. *Did Landmark acknowledge a duty to defend?*

Appellants also contend that Landmark acknowledged a duty to defend them. The trial court rejected this argument, saying:

> [N]one of the writings proffered by [appellants] meet the criteria established by § 28–3504 and the case law. Either the writings are not signed by a chargeable party or the contents do not contain a distinct and unequivocal acknowledgment of an obligation to pay [appellants] the legal fees now the subject of this suit.

We agree with this statement.

■ D.C.Code § 28–3504 (1996) provides in pertinent part:

> In an action upon a simple contract, an acknowledgment or promise by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations or to deprive a party of the benefit thereof unless the acknowledgment or promise is in writing, signed by the party chargeable thereby.

An acknowledgment under section 28–3504 must be "distinct and unequivocal." *Griffith v. Butler,* 571 A.2d 1161, 1163 (D.C.1990). In addition, it must be made "either to the creditor or to someone acting for him, or to some third person with intent that it be known by and influence the action of the creditor." *Heffelfinger v. Gibson,* 290 A.2d 390, 394 (D.C.1972); *accord, Grass v. Eiker,* 123 A.2d 613, 614 (D.C.1956).

The only piece of evidence cited by appellants that is in writing, signed by a representative of Landmark, and addressed to any of the appellants (or a representative of any appellant) is the letter of December 4, 1990, from Heath to Carr.[19] That letter, however, does not contain an unequivocal acknowledgment of an obligation to defend any of these appellants. In fact, the only appellants that are even mentioned in the letter are Ross and Rozet, and the letter states that Landmark would *deny* coverage to them. We therefore agree with the trial court that ap-

pellants failed to establish that Landmark acknowledged, under section 28–3504, any duty to provide a defense to any appellant.

## III. THE RULE 60(B) MOTION

While the direct appeal from the summary judgment was pending, appellants filed a motion in the trial court under Rule 60(b) to set aside the judgment. In essence, appellants maintained that they had newly discovered evidence showing that Landmark had committed "fraud upon the court" in presenting factual issues about whether Landmark had waived the statute of limitations defense. Appellants alleged that, through the discovery process in the California litigation (see note 10, *supra* ), they had uncovered evidence that Landmark's counsel, Steven Migdal, had made false statements to the Circuit Court for Anne Arundel County, Maryland, in order to avoid testifying about the draft complaint, that Landmark had wrongfully redacted portions of Mark Heath's notes, and that Landmark had failed to produce certain letters during discovery. The trial court denied the motion as time-barred under Rule 60(b)(2) and (b)(3). It also ruled that, to the extent that Rule 60(b)(6) might be applicable, appellants had failed to make a sufficient showing of "unusual and extraordinary [circumstances] justifying an exception to the overriding policy of finality."

We agree with the trial court that appellants' motion is time-barred. Rule 60(b)(2) permits the court to relieve a party from a final judgment for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(3) allows the court to set aside a judgment for "fraud ... misrepresentation, or other misconduct of an adverse party." A motion under either of those sections, however, must be made within one year after the judgment or order is entered. The judgment in this case was entered on November 9, 1995, and the Rule 60(b) motion was not filed until January 13,

---

**19.** Appellants also rely on the telephone conversation between Heath and Carr, the letters from Heath to representatives of other insurance companies, the draft complaint, and the check pay- able to NIDC. None of these items, however, is both in writing (as required by the statute) and addressed to one or more of these appellants (as required by the case law).

1997, more than two months after the one-year period had expired.

■ Appellants strive to get around the one-year limitation for Rule 60(b)(2) and (b)(3) motions by arguing that the trial court should have granted them relief under Rule 60(b)(6), which allows the court to set aside a final judgment for "any other reason justifying relief from the operation of the judgment." A motion filed under that subsection need only be filed "within a reasonable time." However, "[i]t is well settled that the more lenient provisions of Rule 60(b)(6) may not be used to nullify the specific time limitations of Rule 60(b)(1), '*nor can it include any of the grounds for relief provided elsewhere in Rule 60(b).*'" *Household Finance Corp. v. Frye*, 445 A.2d 991, 992 (D.C.1982) (citations omitted and emphasis added); *accord, Cox v. Cox*, 707 A.2d 1297, 1299 (D.C.1998);[20] *see also Day v. United Securities Corp.*, 272 A.2d 448, 451 (D.C.1970) (citing cases); *Calvert Credit Corp. v. Foster*, 252 A.2d 521, 522 (D.C.1969). While the scope of Rule 60(b)(6) "cannot be defined with exactness, its scope does not include those reasons set forth in [subsections (1) and (3), and by implication subsection (2)]. To warrant relief under [Rule] 60(b)(6) there must be some 'other reason.'" *Hantman v. Zeiger*, 135 A.2d 650, 652 (D.C.1957) (quoting Rule 60(b)(6)). No such "other reason" is asserted here. Appellants' motion can only be read as alleging "newly discovered evidence" or "fraud" and therefore falls solely under Rule 60(b)(2) and (3). Because the motion asserts grounds for relief only under Rule 60(b)(2) and (3), it cannot be considered under Rule 60(b)(6).[21]

■ As a final matter, we turn to appellants' contention that the summary judgment should be set aside under that portion of Rule 60(b) which states, "This rule does not limit the power of a court ... to set aside a judgment for fraud on the court." In *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), the Supreme Court recognized that courts have the power, rooted in equity, to set aside judgments that would be manifestly unconscionable to enforce. In that case, nine years after the plaintiff-appellant (Hartford) had won an appeal in a patent infringement suit against the defendant, evidence came to light which conclusively established that Hartford had obtained both the judgment on appeal and the patent itself by fraudulent means. The Court characterized Hartford's conduct as "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals" and noted that the case involved not only private parties but also "issues of great moment to the public ...." *Id.* at 245–246, 64 S.Ct. 997. It therefore remanded the case with directions to reinstate the original judgment of the District Court—which by then was twelve years old—denying relief to Hartford, "and to take such additional action as may be necessary and appropriate." *Id.* at 251, 64 S.Ct. 997.

In the years since *Hazel–Atlas*, the federal courts have struggled with the definition of "fraud on the court" in the context of Rule 60(b),[22] but they have agreed that because the equitable doctrine utilized in *Hazel–Atlas* allows courts to overturn settled judgments and orders at any time, the language of the rule should be narrowly construed and "confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1356 (4th Cir.1982) (citations omit-

**20.** *Cox v. Cox* involved Domestic Relations Rule 60 rather than Civil Rule 60, but the relevant language in the two rules is essentially identical.

**21.** Because we uphold the trial court's conclusion that appellants' motion must be considered only under subsections (2) and (3) of Rule 60(b), we need not address the trial court's alternative ruling that appellants failed to show "unusual and extraordinary" circumstances sufficient to warrant relief under Rule 60(b)(6). *See, e.g.,*

*Clement v. District of Columbia Dep't of Human Services*, 629 A.2d 1215, 1219 (D.C.1993); *Oxendine v. Merrell Dow Pharmaceuticals, Inc.*, 563 A.2d 330, 334 (D.C.1989) (citing cases), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

**22.** The federal rule, FED. R. CIV. P. 60(b), is identical to our local Rule 60(b) in all respects pertinent to this case.

ted), *cert. denied*, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). "The concept embraces 'that species of fraud which does, or attempts to, defile the court itself ....'" *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir.1994) (citation omitted), *cert. denied*, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).

We do not think that appellants' allegations, even if true, can be deemed to establish a deliberately planned and carefully executed scheme to "defile the court." The discovery violations alleged by appellants affect only the individual parties; they do not threaten either the court's ability to function or the interests of the general public. "[A]llegations of nondisclosure in pretrial discovery will not support an action for fraud on the court." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985) (citation omitted), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 900 (1986); *accord, Weese v. Schukman*, 98 F.3d 542, 552–553 (10th Cir. 1996); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir.1995), *cert. denied*, 516 U.S. 1045, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996); *see United States v. International Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D.Conn.1972), *aff'd without opinion*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973).

It is true that Mr. Migdal's statements before the Maryland court were inconsistent with portions of his California deposition. There is, however, no clear evidence that he acted dishonestly or in bad faith in either proceeding. *See Robinson, supra*, 56 F.3d at 1267 (fraud on the court "requires ... an intent to deceive or defraud the court"). It is at least possible that in Maryland he recounted the events as he then remembered them and later, in California, amended his statements when he realized that his Maryland testimony was incorrect. Indeed, it was Mr. Migdal himself who supplied the evidence that he was involved in preparing the draft complaint, a fact that "fundamentally undermines [appellants'] claim of fraud on the court." *Transaero, supra*, 24 F.3d at 461. In any event, the Supreme Court in *Hazel–Atlas* specifically declared that fraud on the court was "not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury." 322 U.S. at 245, 64 S.Ct. 997. Other courts, noting that the legal system already provides sanctions for false testimony, have consistently held that even when perjury has been committed, there is no fraud on the court as that term is used in Rule 60(b). *See, e.g., Great Coastal Express, supra*, 675 F.2d at 1357; *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *see also Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 193–195 (8th Cir.1976) (discussing fraud on the court, but not in the context of Rule 60(b)), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). We hold, therefore, that appellants have not established, or even alleged, a fraud on the court that would justify the relief they seek.

## IV. CONCLUSION

For the foregoing reasons, the order granting summary judgment and the order denying the Rule 60(b) motion are both

*Affirmed.*